**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ROBERT F. KENNEDY CENTER FOR JUSTICE AND HUMAN RIGHTS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, *et al.*,<br><br>*Defendants*. | Case No. 25-3860-AHA |

**DECLARATION OF BABETTE PEREZ**

I, Babette Perez, declare as follows:

1.      I am Human Resources Director of the Robert F. Kennedy Center for Justice and Human (Robert & Ethel Kennedy Human Rights Center, or KHRC). I have held this role since 2022. From 2019 to 2022, I was a Human Resource Manager at KHRC. And from 2014 to 2019, I worked in human resources roles within the nonprofit space. As part of my current job responsibilities, I oversee all aspects of human resources, including hiring and recruitment, benefits administration, employee relations, workplace culture, compensation, and performance. I am active in KHRC's various regulatory compliance efforts, and through my role, I am also familiar with the organization's day-to-day operations, substantive work, and strategic programmatic planning.

2.      KHRC is a tax-exempt 501(c)(3) organization and was founded in 1986 to realize Senator Robert F. Kennedy's dream of a more just and peaceful world. KHRC advocates on

human rights issues, pursues strategic litigation to hold governments accountable, educates students about human rights, and trains the next generation of leaders.

3.      To help fulfill its mission, KHRC also litigates immigration cases to pursue systemic change, exposes government wrongdoings related to immigration in reports, complaints, and public hearings, and educates the public and policymakers about immigration and systemic human rights abuses.

4.      KHRC's efforts to further its mission are not limited to work within the United States. KHRC works alongside local, regional, and international partners to hold governments accountable by encouraging individual and collective actors (such as journalists and human rights defenders) to speak out, participate in public affairs, organize protests, and otherwise freely exercise and enjoy their human rights. These international projects include not only litigation (directly and as *amicus curiae*), but also the creation and promotion of technical tools like the Civic Space Case-Tracker, a map that highlights the work of human rights advocates in Africa and the Americas and helps mobilize additional technical support to positively impact case outcomes.

5.      In 2025, KHRC hosted the inaugural Young Women's Leadership Summit, which brought together 65 young women for a day of inspiration, education, and action. KHRC has also participated in litigation to support women's rights to healthcare and address sexual abuse of women in immigration detention. In addition, the organization works with individuals and groups around the world to end violence and discriminatory practices against individuals based on their racial, ethnic, gender, or sexual identities and expression, often through litigation.

6.      KHRC also runs the John Lewis Young Leaders Program, which supports a cohort of 15 college students each year with an impactful social justice or human rights capstone that

they complete. In 2025, fellows championed causes from maternal health equity to refugee rights. Eligibility for the fellowship is open to all undergraduate students, and priority is given to students attending an HBCU, HSI, or HMSI, as well as students from marginalized communities.

7.    Based on my experience and knowledge of our programs and cases, I am certain KHRC has worked on behalf of undocumented immigrants, both through direct representation, and impact litigation on behalf of class members or non-party beneficiaries of the requested relief.

8.    Based both on a 2026 employee survey and my knowledge and experience as KHRC's Human Resources Director, I know that past and current KHRC employees have made payments toward the 120 qualifying payments required by the Public Service Loan Forgiveness program (PSLF). I also know that employees of the organization have obtained forgiveness of their outstanding loan balance through PSLF while working at KHRC.

9.    I have personally completed and certified the Employer Certification Form (ECF) for individuals seeking loan forgiveness through PSLF. Under the old PSLF rule, this was a straightforward process that took very little time. After verifying an employee's full-time status and dates of employment, I could easily and confidently certify the ECF by communicating with the employee, reviewing employment records, and making objectively verifiable determinations.

10.    Under the new PSLF Rule, KHRC will be required to certify to the government on each ECF form submitted that it does not engage in any activities with a "substantial illegal purpose." Under the new rule, the Department of Education deems "aiding or abetting violations of . . . [f]ederal immigration law," "aiding and abetting illegal discrimination," and "supporting terrorism" as activities with a "substantial illegal purpose." But the new PSLF rule's definitions are vague, and the new rule lacks any guarantee that the Department of Education will apply

3

only clearly established, binding legal precedent in its determinations of whether an activity has a "substantial illegal purpose."

11. As mentioned above, KHRC operates several programs related to immigration. Many of those programs involve advocacy on behalf of undocumented immigrants. Although the new rule purports to carve out direct legal representation by certain organizations from the scope of prohibited "aiding and abetting" activities, it is unclear whether that carveout applies to KHRC because it is neither a public defender nor a legal services corporation. In addition, it is unclear whether the carveout applies to litigation support activities other than direct legal representation, such as the Civic Space Case-Tracker. The latter point is especially relevant given the new rule's use of "aiding or abetting" in the civil context.

12. KHRC also operates programs in Venezuela through a set of legally vetted partnerships. The U.S. government recently declared that certain elements of the Venezuelan government are either supporters of terrorism or are terrorists. Based on the new rule's vagueness, it is unclear whether the Department of Education would determine that KHRC's vetted legal partnerships constitute "supporting terrorism" in light of the administration's pronouncements. It is also unclear whether the Department of Education would reach similar determinations regarding any of the programs KHRC operates or collaborates on with partners in countries throughout Africa, Asia, Latin America, and the Caribbean.

13. In light of the Department of Education's February 4, 2025 Dear Colleague Letter, in which it announced that it would interpret Title IX in a manner consistent with the January 20, 2025 Executive Order "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," it is also unclear whether Department would argue or conclude that the federal antidiscrimination laws implicated by the new PSLF

4

rule should be interpreted in the same way. Certain KHRC programs directly and intentionally implicate sex and/or gender, and KHRC operates those programs in a manner consistent with established and binding federal law. But it is unclear whether the Department of Education would determine that the execution of those programs constitute "aiding and abetting illegal discrimination" if KHRC operates those programs in a manner inconsistent with the January 20, 2025 Executive Order. Similarly, it is unclear in light of the Department of Education's February 14, 2025 Dear Colleague Letter, whether the Department would determine that the John Lewis Young Leaders constitutes "aiding and abetting illegal discrimination."

14. Under this new rule, I will no longer be able to certify the ECF by only reviewing employment records. Instead, KHRC will need to hire outside legal counsel to conduct a programmatic review and risk assessment of our operations. Past experience with obtaining outside legal counsel for assistance with compliance-related tasks provides us with an estimated range of $10,000-$20,000 in compliance fees generated by the new PSLF rule. This range likely underestimates the true compliance cost because each new ECF requires a "substantial illegal purposes" certification regarding current programs, which will likely generate ongoing costs for outside legal counsel. KHRC will also likely incur additional compliance-related fees from the financial contractor who compiles our monthly report, as well as from our audit team.

15. Based on the 2026 staff survey regarding PSLF, I anticipate completing at least 6 EFCs this year. To prepare to complete ECFs when the new rule goes into effect on July 1, 2026, KHRC will begin its compliance preparations in May or June 2026.

16. Compliance counsel's outcome is unknown, but there is an operational and outcome impact associated with increased uncertainty. If compliance counsel concludes that certain programs are lawful under established law but still create a risk of enforcement under the

5

new rule, that risk may prevent KHRC from engaging in programs to further its mission. In the event outside compliance ultimately concludes KHRC faces little to no exposure under the new rule, the organization still suffers a detrimental effect. The compliance costs reduce the amount of money that the organization otherwise would have been able to spend on programs and projects furthering its mission.

17.     In addition to increasing compliance costs and impacting operational activities, the new PSLF rule also harms KHRC by reducing the pool of qualified candidates from which it can recruit.

18.     KHRC understands the impact student debt and PSLF can have on an individual's career choices. Open-ended responses to the 2026 staff survey regarding PSLF made it clear that PSLF was the determining factor for at least two KHRC employees to attend law school and enter the immigration and human rights career field.

19.     KHRC intentionally incorporates discussions about student loan repayment and forgiveness opportunities into its recruiting and hiring processes. PSLF is a recruitment and talking point for KHRC and in the nonprofit space generally. Based on my experience, I understand that PSLF impacts some individuals' education and career decision-making processes as early as high school graduation.

20.     If the new PSLF rule is allowed to take effect, it will negatively impact KHRC and other 501(c)(3) organizations who risk losing eligibility due to the types of programs they operate. The reduction in loan assistance, even if just a perceived risk, carries a real financial cost for borrowers who make future financial plans based on PSLF. If the new PSLF rule is allowed to go into effect, the financial uncertainty it will create for borrowers guarantees a reduction of the nonprofit workforce and fewer qualified candidates for KHRC to employ.

6

Executed this 9th day of February, 2026.

I declare under penalty of perjury that the foregoing is true and correct.