**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ROBERT F. KENNEDY CENTER FOR JUSTICE AND HUMAN RIGHTS, *et al.*,<br><br>        *Plaintiffs*,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF<br><br>EDUCATION, *et al.*,<br><br>        *Defendants*. | Case No. 25-3860-AHA |

**DECLARATION OF JORGE LOWEREE**

I, Jorge Loweree, declare as follows:

1.        I am the Managing Director of Programs and Strategy at the American Immigration Council (the Council). In this role, which I have held since 2022, I provide strategic leadership for the Council's various teams—Legal, Policy, State & Local, and Research—in addition to the Immigration Justice Campaign (IJC). Through this role, I have personal knowledge of the Council's organizational structure, human resources and recruiting practices, budgets, initiatives, and day-to-day operations.

2.        The Council is a tax-exempt 501(c)(3) organization. The Council works to advance positive public attitudes and create a more welcoming America that provides fair process for immigrants through litigation, research, legislative and administrative advocacy, and communications.

3.      The Council's State and Local Initiatives team convenes and advises senior state government officials in 23 states working to promote immigrant inclusion and economic development. These initiatives provide tailored research and technical assistance to civic, business, and nonprofit leaders to highlight immigrants' contributions and help them advocate for inclusive policies at the local level. They also support chambers of commerce and other business leaders in advocating for immigration reforms at the local, state, and federal levels.

4.      The Council's Immigration Justice Campaign drafts and publishes training materials to assist attorneys and advocates representing noncitizens impacted by immigration detention and removal. The IJC trains and mentors pro bono attorneys assisting noncitizens navigating immigration detention and defending against removal. The Council also directly represents noncitizens navigating immigration detention and defending against removal.

5.      The Council works with a network of partner organizations to identify negative trends in immigration enforcement and advocate for national policy change and accountability measures.

6.      The Council's Litigation team brings lawsuits challenging federal and state policies that harm immigrant communities, represents noncitizens seeking to hold the government accountable for violations of their rights, litigates habeas petitions, and files and litigates Freedom of Information Act requests to demand transparency from immigration agencies. The Litigation team also produces practice advisories and provides training for immigration attorneys seeking to develop federal litigation skills.

7.      The Department of Education's new Public Service Loan Forgiveness (PSLF) rule will negatively impact the Council's ability to recruit and employ individuals who are using their

employment to qualify for PSLF or who intend to apply for PSLF forgiveness based on their service at the Council.

8.      Under the new PSLF rule, the Council will be required to periodically certify that it does not engage in activities with a "substantial illegal purpose." The Department of Education recommends that borrowers seeking loan forgiveness through PSLF submit this certification annually. Because the Council has employees who participate in PSLF, it must prepare to certify when the new PSLF rule becomes effective on July 1, 2026. Because those preparations will take time and coordination, the Council has already been forced to commence compliance preparations in anticipation of the PSLF rule's potential implementation.

9.      The rule defines "aiding or abetting violations of 8 U.S.C. § 1325 or other Federal immigration laws" and "[e]ngaging in a pattern of aiding and abetting illegal discrimination," among other activities, as activities with a substantial illegal purpose.

10.     The Rule provides no guidance as to how the Department will apply the criminal-law concept of aiding and abetting to civil violations of immigration or discrimination laws. Accordingly, the Council cannot know which of its activities could be deemed disqualifying, and it therefore will be required to expend significant time, money, and staff resources to review its activities for compliance with the rule.

11.     Although the Department of Education wrote in response to comments that it "will not take action against legal employers under [the new PSLF] rule who are lawfully representing clients, including public defenders, or under the Legal Services Corporation Act" the scope of that statement, which is not part of the rule itself, is not clear. In addition, many of the Council's programs involve providing support and guidance to others who directly assist immigrants without legal status.

3

12.    With respect to its own internal practices, the Council has a Diversity, Equity, and Inclusion plan to help scale the organization's impact and reach as it seeks to further its mission. Based on internal and external legal analysis, the Council is confident that its Diversity, Equity, and Inclusion plan, which is designed to help it better fulfill its mission, does not run afoul of any established federal discrimination law. But in light of the Administration's January 21, 2025, executive order that expressly targets "diversity, equity, and inclusion," as well as the subsequent guidance from the Department of Justice and Equal Employment Opportunity Commission on the subject, the Council cannot be certain that the Department of Education will not view its DEI plan as contrary to federal law or "engaging in a pattern or practice of aiding and abetting illegal discrimination."

13.    The Council estimates that it will incur costs of between $20,000 and $26,000 for compliance with the new PSLF rule. These figures are based on estimated legal fees ranging from $10,000 to $12,000 for consultation with outside counsel, and estimated staff costs between $10,000 and $14,000 for the staff time necessary to analyze and summarize new and ongoing work streams, review guidance from counsel, develop internal communications and guidance, support individual employees with PSLF certifications, retrieve and verify employment and payroll records, respond to staff questions, and provide overall HR coordination and quality control.

14.    Before the new PSLF rule, the Council could complete the Employer Certification Form required by PSLF by verifying an employee's dates of employment and status as a full-time employee. Under the new rule, the Council must now certify that it does not engage in any activities with a "substantial illegal purpose." The legal analysis to analyze Council programs

4

needed to certify that the Council does not engage in any activities with a "substantial illegal purpose" is beyond the modest administrative burden of the prior rule.

15.    In addition, based on my role and knowledge regarding employee use of PSLF, the new PSLF rule threatens the Council's ability to retain current employees and recruit new ones.

16.    The Council administered a survey in 2025 to help identify PSLF program participants and gauge the impact of the new PSLF rule on the organization's employees. Several Council employees have received loan forgiveness through PSLF. Several more are in the process of making their 120 qualifying PSLF payments and will not make their final payment until after July 1, 2026, when the new PSLF rule goes into effect.

17.    Employees who are currently in repayment articulated the detrimental effect of a rule that threatens the Council's status as a PSLF-eligible employer. For some, the uncertainty impacts current and long-term budgeting for living costs and emergencies. Several Council staff are facing the prospect of going from being within just a few months or years of completing the repayment of their loans, to instead facing years or decades of payments – and tens or hundreds of thousands of dollars in additional payments – if the new PSLF goes into effect and the Council's activities were deemed to have a "substantial illegal purpose." Individual team leaders and I are also concerned about the Council's ability to recruit the skilled attorneys and other staff necessary to execute on our mission if the new PSLF rule is implemented. Given the average debt load carried by new law school graduates, we anticipate that many strong candidates who would otherwise consider working for the Council will be forced to work with other organizations or within other sectors if they were to believe that the Council may be at risk of being unable to participate in PSLF.

Executed this 2<u>nd</u> day of February, 2026.

I declare under penalty of perjury that the foregoing is true and correct.

 

_____
Jorge Loweree