## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBERT F. KENNEDY CENTER FOR
JUSTICE AND HUMAN RIGHTS, *et al.*,

    *Plaintiffs*,

    v.

UNITED STATES DEPARTMENT OF
EDUCATION, *et al.*,

    *Defendants*.

Case No. 25-3860-AHA

### DECLARATION OF JUAN PROAÑO

I, Juan Proaño, declare as follows:

1.    I am the Chief Executive Officer of the LULAC Institute, Inc. (LULAC). I have held this role since 2023. As part of my job responsibilities, I oversee all daily operations, identify strategic growth areas, and work to amplify the organization's advocacy initiatives and action-oriented programs.

2.    LULAC is a tax-exempt 501(c)(3) organization. LULAC's mission is to serve Hispanic Americans in the United States and Puerto Rico through community-based programs that focus on economic conditions, educational attainment, political influence, housing, health, and civil rights. LULAC programs range from citizenship drives to education and health events that empower the Hispanic community at the local, state, and national levels.

3.    LULAC provides programs to advance opportunity for Latino youth. For example, each year the LULAC Academy hosts hundreds of young Latino adults, where they

partake in workshops and sessions regarding health and technology. Additionally, with support from a philanthropic foundation, LULAC provides over 82 programs across the United States for college readiness and preparedness programs with the goal for Latino students to attain on-time graduation and a pathway to higher education.

4. LULAC invests employee time and monetary resources in programs that offer assistance for those going through the citizenship application process. LULAC crafts toolkits that provide knowledge about the rights of undocumented individuals directed toward both undocumented individuals and those who provide various forms of assistance to them.

5. LULAC invests employee time and monetary resources in several health initiatives, including Latinos Living Healthy, which is dedicated to educating and informing the Latino communities about health issues within the community while providing resources to individuals who otherwise may not have access to them.

6. LULAC is dedicated to serving the Latino community across the United States and Puerto Rico and does not ask individuals who participate in its programs to provide their immigration status. Based on my experience and familiarity with the populations that we serve, I am confident that LULAC has aided immigrants of unknown status through our programs.

7. Because LULAC is a 501(c)(3) organization, LULAC employees have obtained federal student loan forgiveness through the Public Service Loan Forgiveness (PSLF) program.

8. LULAC highlights its status as a PSLF eligible employer when recruiting potential employees. We do so because we understand that the benefit provided by PSLF is positively viewed by potential employees. This is a benefit for us when recruiting.

9. In mid-2025, I personally interviewed a candidate with federal student loans who told me that PSLF was a selling point and a reason for considering employment with LULAC.

10. As CEO of LULAC, I have personally completed and certified the Employer Certification Form (ECF) for individuals seeking loan forgiveness through PSLF. Most recently, I completed an ECF for a former employee who made loan payments towards PSLF while she was employed at LULAC.

11. The regulations governing ECF have long required employers like LULAC to certify an individual's full-time status and dates of employment. To implement this requirement and confirm the accuracy of information provided on the ECF form, I typically consult with LULAC HR staff, who review relevant employment records and report back to me.

12. Because of the new PSLF rule, LULAC will be required to certify to the government on each ECF form submitted that it does not engage in any activities with a "substantial illegal purpose." This new rule injures LULAC in multiple ways.

13. As discussed above, LULAC serves and provides various forms of assistance to Latino communities across the United States and Puerto Rico without asking for immigration status. These programs are typically provided to members of a specific ethnic group.

14. Similarly, certain LULAC programs—such as its Women's Empowerment Program—are targeted only towards women.

15. The new rule classifies "aiding or abetting violations of 8 U.S.C. 1325 or other Federal immigration laws" and "[e]ngaging in a pattern of aiding and abetting illegal discrimination" as activities with a "substantial illegal purpose."

16. The new PSLF rule's definitions are vague, and the new rule lacks any guarantee that the Department of Education will apply only clearly established, binding legal precedent in its determinations of whether an activity has a "substantial illegal purpose." In light of the Department of Education's February 14, 2025 Dear Colleague Letter, which called into question

activities geared toward supporting identifiable groups, as well as other similar communications from executive branch officials and agencies, it is unclear whether the Department would argue or conclude LULAC's programs targeting Latinos and women constitute "aiding and abetting illegal discrimination." In a similar vein, given the varying types of assistance LULAC provides to both individuals with unknown status and those who help individuals with unknown status, it is unclear whether the Department of Education would consider any of these things to constitute "aiding or abetting" violations of federal immigration laws.

17.     Accordingly, to certify that LULAC has not engaged in any activities with a substantial illegal purpose within the meaning of the new PSLF rule, LULAC will need to expend significant staff time and may experience additional expenses for legal counsel to ensure ongoing compliance with the new rule, not only for continuing programs, but also for new programs. These are increased compliance costs to complete the new ECF as compared to the old PSLF rule, which did not did not require a programmatic review or a legal analysis of any kind, whether it be of clearly established law or a predictive analysis that anticipates the Department of Education's legal interpretation.

18.     To prepare to complete the new ECF when the rule goes into effect on July 1, 2026, LULAC anticipates its internal review of programs will begin no later than April 2026, followed by a referral of the matter to a non-voting board member who serves as legal advisor to the LULAC president. Guided by the recommendations of the legal advisor, the board will then seek outside counsel because there are no board members who can provide the necessary legal services *pro bono*. Based on my experience engaging outside counsel on prior matters requiring review of LULAC's internal practices, I estimate that hiring outside counsel to help with

4

compliance for the new PSLF rule will cost LULAC somewhere in the range of $4,000 to $6,000.

19. By its plain language, the new PSLF rule strips all 501(c)(3)s of their default status as employers whose employees can benefit from PSLF. Current and potential employees would have uncertainty regarding their ability to participate in PSLF while employed at LULAC. Based on my experience as CEO, losing this status would negatively impact our ability to recruit and retain employees and force us to expend more resources to do both. In addition, the uncertainty regarding our future eligibility will negatively impact our ability to recruit candidates.

Executed this 9th day of February, 2026.

I declare under penalty of perjury that the foregoing is true and correct.

5