**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ROBERT F. KENNEDY CENTER FOR JUSTICE AND HUMAN RIGHTS, *et al.*,<br><br>　　　*Plaintiffs*,<br><br>　　　　v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, *et al.*,<br><br><br>　　　*Defendants*. | Case No. 25-3860-AHA |

**DECLARATION OF KELSEY LOUIE**

I, Kelsey Louie, declare as follows:

1.　　I am the Chief Executive Officer for The Door - A Center of Alternatives, Inc. (The Door). I have served in this position basis since 2021. Through my role, I have personal knowledge of The Door's organizational structure, budgets, initiatives, and day-to-day operations, including HR.

2.　　The Door is a tax-exempt 501(c)(3) organization.

3.　　For more than 50 years, The Door has been a trusted place for young people between the ages of 12 and 24. All are welcomed as they are, to be themselves, address challenges, and access services when and how they need them.

4.　　With roots in the heart of New York City, The Door offers comprehensive programs and services including mental health counseling, health and nutrition assistance, legal

services, housing support, arts, education, and career guidance. At The Door, everything is free and everyone is welcome. Through our integrated approach, we seek to provide any young person with the tools, resources, and opportunities needed to successfully transition into adulthood.

5.    The Door is prominent in the youth development sector thanks to the expertise of our leadership and staff, who are leading experts across various fields, including health care, legal services, and workforce development.

6.    The Door provides direct services, including legal representation and healthcare, to undocumented young people. Both independently and to fulfill grant obligations, The Door also provides services that target historically underserved, marginalized populations. Finally, The Door provides gender-affirming care, when medically appropriate, through its healthcare program. It is unclear whether these or other of our programmatic activities would be deemed a "substantial illegal purpose" under the new PSLF rule.

7.    Public Service Loan Forgiveness (PSLF) allows professionals at The Door to continue their public service careers without the burden of overwhelming student loan debt. The Door considers its PSLF eligibility as a key employee benefit and we highlight it during our employee recruitment process to help make us a competitive and attractive employer.

8.    If the new PSLF rule is permitted to take effect, many of our employees would face uncertainty about whether their years of service will ultimately count toward loan forgiveness. Staff who rely on PSLF to make their commitment to careers in public service financially possible may be forced to leave for higher-paying jobs outside of their areas of interest and expertise.

9. The Door has employed individuals who qualify for PSLF since the program's inception. In October 2025, a staff survey conducted by the organization found that sixty-five percent of the fifty-two individuals who responded affirmed that PSLF played a role in their decision to attend school and the jobs they consider. Sixty-three percent reported currently having direct federal loans and that they have used monthly payments made during their time working at The Door towards the required 120 PSLF monthly payments. Forty percent reported that they have been repaying their direct federal loans for 3 or more years, with most of these reporting that they have been in repayment for over 6 years.

10. The Door also employs individuals who have had their loans forgiven through the PSLF process.

11. The Door currently employs over 220 staff. Although not all of those employees participate in PSLF, a substantial number do. We estimate that the process of complying with the new employer certification process would exceed the capacity of our Human Resources (HR) team. Under the old PSLF rule, The Door's HR team could verify an employees' dates of employment and status as a full-time employee. But under the new PSLF Rule, the certification process transforms from a primarily administrative certification to one that requires legal analysis and substantive review of our programs.

12. This requirement would not only pose a significant administrative burden, but it would also require that we seek external counsel to dutifully respond to the proposed attestation. Pursuant to the new PSLF rule, an organization loses its status as a PSLF-eligible employer if it fails to certify that it has not engaged in activity with a "substantial illegal purpose," or the Secretary of Education independently determines that the organization has engaged in an activity with a "substantial illegal purpose."

13.     Although none of The Door's activities violate established federal or New York state laws, the New PSLF Rule definitions are vague and lack any guarantees that the Secretary will apply only binding precedent when making her determination. This is especially true where the new Rule purports to apply criminal law concepts to civil law with "aiding" and "abetting" language, as it does with respect to violations of "Federal immigration laws" and "illegal discrimination."

14.     This is also true regarding gender-affirming healthcare. As a part of its broader provision of healthcare, The Door provides gender-affirming healthcare to individuals 18 years and older, consistent with established New York and federal law. The new PSLF rule's definition of "substantial illegal purpose" includes the provision of gender affirming care to individuals under the age of 19 "in violation of Federal or state law." Although the Department of Education's response to the comments specified that it would defer to state-court interpretations of the law for whether something was unlawful, it makes no similar representations or guarantees with respect to the interpretation of federal law.

15.     Only with the guidance of outside legal counsel will we be able to responsibly complete the certification required by the new PSLF rule and be able to defend our certification if it were challenged by the Secretary.

16.     We anticipate that this increased compliance demand will require additional time from our Human Resources team to track and complete the certification forms, impacting our current administrative workflow. These new administrative duties would also incur additional expenses to our operating budget for the cost of obtaining legal counsel, which we do not currently employ. Based on prior experience engaging outside legal counsel, we expect this to cost around $70,000 annually.

4

17.     Given the number of employees we have who participate in PSLF and the Department of Education's recommendations that borrowers submit ECFs annually, we plan to begin compliance preparations no later than April 2026.

18.     Finally, the new PSLF rule threatens to disrupt our capacity to deliver services and be detrimental to the thousands of teens and young adults The Door serves each year. This impact would extend beyond the organization and our staff, directly harming the community of young people who depend on us most.



DocuSigned by:

A6A1117F25234C1...

Executed this __9__ day of February, 2026.

I declare under penalty of perjury that the foregoing is true and correct.