IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

ROBERT F. KENNEDY CENTER FOR
JUSTICE AND HUMAN RIGHTS, *et al.,*
    *Plaintiffs,*
      v.                        Case No. 25-3860 - AHA

UNITED STATE DEPARTMENT OF
EDUCATION, *et al.,*
    *Defendants.*

**BRIEF AMICUS CURIAE OF THE
PUBLIC INTEREST & PUBLIC SERVICE PROGRAM
GEORGE WASHINGTON UNIVERSITY LAW SCHOOL
IN SUPPORT OF PLAINTIFFS**

Alan B. Morrison (DC Bar No. 073114)
George Washington University Law School
2000 H Street NW
Washington D.C. 20052
202 994 7120
abmorrison@law.gwu.edu
Counsel for the Amicus Curiae

February 19, 2026

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………..…1

ARGUMENT …………………………………………………………………………….2

DEFENDANTS' RULE WILL CAUSE IMMEDIATE AND
SIGNIFCANT HARM TO STUDENTS WHO INTEND TO BENEFIT
FROM THE PSLF PROGRAM.

CONCLUSION …………………………………………………………….………..5
.

## TABLE OF AUTHORITIES

College Cost Reduction and Access Act, Pub. L. No. 110-84, § 401, 121 Stat. 784,

   800–01 (2007) …………………………………………………………………….1

Internal Revenue Code, section 501(c)(3) ……………………………………………1, 2, 3

## INTRODUCTION

The plaintiffs in this action are organizations that are tax exempt under section 501(c)(3) of the Internal Revenue Code.  Defendants administer the Public Service Loan Forgiveness program (PSLF) that was enacted in the College Cost Reduction and Access Act, Pub. L. No. 110-84, § 401, 121 Stat. 784, 800–01(2007). Under the PSLF, individuals who work for certain categories of public service organizations, as defined in the statute, may have their educational loans from the Federal Government forgiven if they make 120 payments.  Defendants have issued a rule that would, if upheld, alter the statutory requirements for applicable employers, including the section 501(c)(3) organizations suing in this case, as well as the state and local entities that have brought parallel actions in the District of Massachusetts.

Amicus Curiae Public Interest and Public Service Program is a project of the George Washington University Law School ("GW Law School").  One of its goals is to encourage students to pursue careers in public interest, including both governments and nonprofit organizations, and to help interested students and recent graduates make those careers affordable.  The single most important factor that enables students to choose public interest careers is the availability of PSLF.  However, if this rule is upheld, fewer students would be able to choose the public service path because of defendants' narrowing of eligible employers.  Moreover, the uncertainty occasioned by the vagueness of the rule and the fear that defendants will challenge the eligibility of an organization that a student or recent graduate might prefer will cause countless other students to forgo considering public service as an option.

Plaintiffs' motion for summary judgment spells out the clear violations of law resulting from the challenged rule, and amicus will not repeat them here, except to note that the statute is clear and does not provide the Department of Education any role in determining whether an

1

organization meets the requirements of section 501(c)(3). That is the job of the Internal Revenue Service. Rather, this brief will focus on the harm that will result to law students and recent graduates, who are intended to benefit from the PSLF program if the rule is sustained.

## ARGUMENT

### DEFENDANTS' RULE WILL CAUSE IMMEDIATE AND SIGNIFCANT HARM TO STUDENTS WHO INTEND TO BENEFIT FROM THE PSLF PROGRAM.

In the experience of amicus, law students recognize very early that the combination of lower salaries at public interest and government jobs, as well as mounting student debt, create major barriers for students who would prefer to have a career in public service. Most students at GW Law School borrow money from the Federal Government to pay for their education. The most recent figures are from 2024, and for students who have federal loans, the average debt on graduation was $165,164, all of which is eligible for federal loan forgiveness. Thus, until this rule was promulgated, students knew that, if they made the required 120 payments, they would have their federal loans forgiven, provided they worked for one of the statutorily eligible employers.

But under this rule, there is no longer the safe harbor provided by Congress. In thinking about a public service career, students and recent graduates must now factor in the unknowable possibility that even an organization that the IRS currently recognizes under section 501(c)(3), may have their PSLF status revoked by the Department of Education at any time, before or after a graduate begins work there. And, according to the rule, a determination of ineligibility will be made solely by the Secretary of Education, not a court of law, if she concludes that the organization has a "substantial illegal purpose." Moreover, as plaintiffs demonstrate on pages 29-34 of their memorandum, the rule suffers from very serious vagueness problems that make it difficult if not impossible for the organization itself to know whether its conduct will fall within what the

2

Secretary concludes is "illegal" and thus will lose its eligibility for PSLF status that is required if borrowers are to have their loans forgiven.

Until 2025, with the hiring freeze and significant firings at the Justice Department and many other federal agencies, more than 23% of GW Law graduates for the class of 2024, the most recent year for which we have published data, accepted positions in the public sector—government agencies at all levels and nonprofit organizations (not including judicial clerkships)—almost all of which are PSLF eligible under the statute. But the vagueness problem caused by the challenged rule directly affects students pondering a public service career in two ways. First, they will have great difficulty in determining whether a particular employer is at risk of losing its PSLF eligibility. If, as plaintiffs demonstrated, an employer, who has full access to all of its own activities, cannot readily determine whether it is complying with this rule, that difficulty will be magnified several times over for a student looking at the organization from the outside, trying to assess the risk of denial of PSLF status, which may well be the determinative factor in deciding whether a student will accept a job offer.

Second, in addition to the difficulty in assessing the risk that a specific entity will become ineligible as a PSLF employer, students considering whether to follow the public service path will necessarily think about the public service sector as a whole and have a legitimate concern about whether this rule will substantially narrow future choices of PSLF employers. Moreover, if this rule is upheld, the Department may well add on other disfavored activities that will preclude more section 501(c)(3) entities, as well as state and local agencies, from maintaining PSLF eligibility. This double dose of uncertainty is almost certain to discourage law students from even considering public service careers, which runs directly counter to the goal of the program.

The uncertainty for law students does not arise just in their final year when they have an offer from a current PSLF-eligible employer. Almost from the moment they arrive on campus, students are thinking about their careers. Working for a large corporate law firm, with starting salaries in excess of $200,000 per year, is very tempting for many students, especially for those with huge law school loans to repay. In part to counteract that pressure, amicus holds a three-day pre-orientation program, which is attended by over 100 incoming students annually, where they learn about public service careers and meet like-minded students. This is followed in short order by a half day program where one of the key topics is financing their public interest career, as well as many other programs focused on careers in government or the nonprofit sector. For those students who think they want to work for the federal, state, or local government, or a nonprofit organization, they learn that they must tailor their summer job searches to that sector. Furthermore, when they are able to choose their upper-level courses, those choices will be affected by whether they are going to a big law firm or looking towards the public sector. For these reasons, the uncertainties discussed above are not limited to the moment when a student must say yes or no to a public sector job offer, but radiate back to the start of law school and continue through graduation.

**CONCLUSION**

For the foregoing reasons and those set forth in the memorandum submitted by the plaintiffs, the Court should grant summary judgment to the plaintiffs.

>                           Alan B. Morrison
>                           George Washington University Law School
>                           2000 H Street NW
>                           Washington D.C. 20052
>                           202 994 7120
>                           abmorrison@law.gwu.edu
>                           Counsel for the Amicus Curiae

February 19, 2026