**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROBERT F. KENNEDY CENTER FOR JUSTICE AND HUMAN RIGHTS, *et al.*, | |
| Plaintiffs, | |
| v. | No. 25-cv-03860-AHA |
| LINDA MCMAHON, in her official capacity as SECRETARY OF EDUCATION, *et al.*, | |
| Defendants. | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION TO DISMISS, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

     I.     Statutory and Regulatory Background ................................................................... 2

     II.    Factual Background ............................................................................................... 4

LEGAL STANDARD ..................................................................................................................... 5

     I.     Dismissal Standard ................................................................................................ 5

     II.    Summary Judgment Standard ............................................................................... 6

ARGUMENT .................................................................................................................................. 7

     I.     Dismissal Is Warranted Because Plaintiffs Cannot Satisfy Article III Standing
           and Ripeness Requirements. ................................................................................. 7

           A.     Plaintiffs Cannot Establish Standing. ...................................................... 7

           B.     Plaintiffs' Claims are not Ripe ............................................................... 10

     II.    Defendants are Entitled to Summary Judgment on Plaintiffs' APA Claims. ....... 11

           A.     The PSLF Final Rule is Neither Contrary to the HEA Nor in
                 Excess of HEA Authority. ....................................................................... 11

           B.     The PSLF Final Rule is Not Arbitrary or Capricious. .............................. 15

     III.   Plaintiffs' Constitutional Claims Fail as a Matter of Law. ................................... 19

           A.     The PSLF Rule is Not Impermissibly Vague. ......................................... 20

           B.     The PSLF Final Rule Does not Implicate the First Amendment .............. 23

     IV.   Any Relief Should be Limited to the Parties Before the Court. ........................... 24

CONCLUSION ............................................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs v. Gardner,*
   387 U.S. 136 (1967)................................................................................. 7

*AD HOC Telecom. Users Comm. v. FCC,*
   572 F.3d 903 (D.C. Cir. 2009) ............................................................... 17

*Advoc. Christ Med. Ctr. v. Azar,*
   No. 17-cv-1519 (TSC), 2022 WL 2064830 (D.D.C. June 8, 2022),
   *aff'd,* 80 F.4th 346 (D.C. Cir. 2023). ..................................................... 6

*Am. Ass'n of Physics Teachers, Inc. v. Nat'l Sci. Found.,*
   804 F. Supp. 3d 45 (D.D.C. 2025) ....................................................... 21

*Am. Nat'l Ins. Co. v. FDIC,*
   642 F.3d 1137 (D.C. Cir. 2011) ............................................................. 5

*American Bar Ass'n v. United States Department of Education,*
   370 F. Supp. 3d 1 (D.D.C. 2019) ......................................................... 21

*Arpaio v. Obama,*
   797 F.3d 11 (D.C. Cir. 2015) ................................................................. 5

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)............................................................................... 6

*Atherton v. D.C. Off. of the Mayor,*
   567 F.3d 672 (D.C. Cir. 2009) ............................................................... 6

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)............................................................................... 6

*Bob Jones Univ. v. United States,*
   461 U.S. 574 (1983).............................................................................. 14

*Califano v. Sanders,*
   430 U.S. 99 (1977)................................................................................. 7

*California v. Texas,*
   593 U.S. 659  (2021)............................................................................ 25

*Carman v. Yellen,*
   112 F.4th 386 (6th Cir. 2024) .............................................................. 20

*Cboe Glob. Markets, Inc. v. Sec. & Exch. Comm'n,*
   155 F.4th 704 (D.C. Cir. 2025).............................................................. 14

*Church of Scientology of Cal. v. Comm'r*,
    83 T.C. 381 (1984) ............................................................................................. 14

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ......................................................................................... 7, 9

*Cutter v. Wilkinson*,
    423 F.3d 579 (6th Cir. 2005) ............................................................................. 24

*Deaf Smith Cnty. Grain Processors, Inc. v. Glickman*,
    162 F.3d 1206 (D.C. Cir. 1998) ........................................................................ 18

*DeVillier v. Texas*,
    601 U.S. 285 (2024) .......................................................................................... 19

*Disner v. United States*,
    888 F. Supp. 2d 83 (D.D.C. 2012) ...................................................................... 5

*Doran v. Salem Inn, Inc.*,
    422 U.S. 922 (1975) .......................................................................................... 24

*Duncan v. Walker*,
    533 U.S. 167 (2001) .......................................................................................... 12

*FCC v. Prometheus Radio Project*,
    592 U.S. 414 (2021) ..................................................................................... 15, 18

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ......................................................................................... 7, 9

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) .......................................................................................... 21

*Green Country Mobilephone, Inc. v. FCC*,
    765 F.2d 235 (D.C. Cir. 1985) .......................................................................... 17

*Gustafson v. Alloyd Co.*,
    513 U.S. 561 (1995) .......................................................................................... 12

*King v. Burwell*,
    576 U.S. 473 (2015) .......................................................................................... 13

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) .......................................................................................... 14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ......................................................................................... 5, 7

*Madsen v. Women's Health Ctr., Inc.*,
 512 U.S. 753 (1994) ............................................................................................ 25

*Maynard v. Cartwright*,
 486 U.S. 356 (1988) ............................................................................................ 20

*Michigan v. EPA*,
 576 U.S. 743 (2015) ............................................................................................ 18

*Moody v. NetChoice, LLC*,
 603 U.S. 707 (2024) .................................................................................... 19, 20

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
 463 U.S. 29 (1983) ...................................................................................... 15, 18

*Murthy v. Missouri*,
 603 U.S. 43 (2024) ............................................................................................... 7

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
 538 U.S. 803 (2003) ............................................................................................ 10

*Nat'l Rifle Ass'n of Am. v. Vullo*,
 602 U.S. 175 (2024) ....................................................................................... 23-24

*Nat'l Urb. League v. Trump*,
 783 F. Supp. 3d 61 (D.D.C. 2025) ........................................................ 19, 22, 23

*Navegar, Inc. v. United States*,
 103 F.3d 994 (D.C. Cir. 1997) ........................................................................ 8, 9

*NB ex rel. Peacock v. District of Columbia*,
 794 F.3d 31 (D.C. Cir. 2015) ............................................................................ 20

*NLRB v. Noel Canning*,
 573 U.S. 513 (2014) ............................................................................................ 15

*Petal Gas Storage, LLC v. FERC*,
 496 F.3d 695 (D.C. Cir. 2007) .......................................................................... 18

*Porter v. CIA*,
 778 F. Supp. 2d 60 (D.D.C. 2011) ...................................................................... 6

*Psychas v. Dist. Dep't of Transp.*,
 No. CV 18-0081 (ABJ), 2019 WL 4644503 (D.D.C. Sep. 24, 2019) .................... 22

*Rhode Island v. Massachusetts*,
 37 U.S. 657 (1838) .............................................................................................. 24

*Scolaro v. D.C. Bd. of Elections & Ethics*,
   104 F. Supp. 2d 18 (D.D.C. 2000) ............................................................ 6

*Seegars v. Gonzales*,
   396 F.3d 1248 (D.C. Cir. 2005) ............................................................... 8

*Select Specialty Hosp.-Akron, LLC v. Sebelius*,
   820 F. Supp. 2d 13 (D.D.C. 2011) ............................................................ 6

*Speelman v. United States*,
   461 F. Supp. 2d 71 (D.D.C. 2006) ............................................................ 6

*Texas v. United States*,
   523 U.S. 296 (1998) ................................................................................ 10

*Thomas v. Principi*,
   394 F.3d 970 (D.C. Cir. 2005) ................................................................. 5

*Town of Castle Rock v. Gonzalez*,
   545 U.S. 748 (2005) ................................................................................ 20

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025) ................................................................................ 25

*Trump v. New York*,
   592 U.S. 125 (2020) ................................................................................ 10

*United States v. District of Columbia*,
   44 F. Supp. 2d 53 (D.D.C. 1999) ............................................................ 10

*United States v. Hansen*,
   599 U.S. 762 (2023) ................................................................................ 19

*United States v. Texas*,
   599 U.S. 670 (2023) ........................................................................... 24, 25

*United States v. Williams*,
   553 U.S. 285 (2008) ................................................................................ 23

*United Steel v. Mine Safety Health Admin.*,
   925 F.3d 1279 (D.C. Cir. 2019) ............................................................... 24

*Western Minnesota Municipal Power Agency v. FERC*,
   806 F.3d 588 (D.C. Cir. 2015) ................................................................. 13

**Statutes**

5 U.S.C. § 706 ............................................................................................ 11, 24

18 U.S.C. § 2 ................................................................................................ 19

20 U.S.C. § 1087e ..................................................................................... *passim*

20 U.S.C. § 1221e-3 .................................................................................. 3, 11

20 U.S.C. § 3441 ............................................................................................ 11

20 U.S.C. § 3471 ............................................................................................ 12

20 U.S.C. § 3474 ............................................................................................ 11

The College Cost Reduction and Access Act,
    Pub. L. No. 110–84, 121 Stat. 784 (2007). ........................................... 2

**Rules**

Federal Rule of Civil Procedure 12 ............................................................ 5, 6

Federal Rule of Civil Procedure 56 ............................................................... 6

**Regulations**

34 C.F.R. § 685.219 ....................................................................................... 12

73 Fed. Reg. 63232 (Oct. 23, 2008) ............................................................... 3

74 Fed. Reg. 55972 (Oct. 29, 2009) ............................................................... 3

77 Fed. Reg. 76414 (Dec. 28, 2012) ............................................................... 3

80 Fed. Reg. 67204 (Oct. 30, 2015) ............................................................... 3

85 Fed. Reg. 49798 (Aug. 14, 2020) .............................................................. 3

87 Fed. Reg. 65904 (Nov. 1, 2022) ................................................................ 3

88 Fed. Reg. 43064 (July 6, 2023) ................................................................. 3

88 Fed. Reg. 43820 (July 10, 2023) ............................................................... 3

90 Fed. Reg. 40154 (Aug. 18, 2025) .............................................................. 3

90 Fed. Reg. 48966 (Oct. 31, 2025) ....................................................... *passim*

**INTRODUCTION**

The Public Service Loan Forgiveness ("PSLF") program seeks to incentivize public service employment by cancelling the balance of interest and principal due on eligible Federal student loans for borrowers who have made 120 payments while employed in a public service job.  *See* 20 U.S.C. § 1087e(m).  Pursuant to its authority and obligation to administer the PSLF program, the Department of Education ("Department") recently published a final regulation that requires PSLF-participating employers to certify that they do not engage in illegal activities, as proscribed under Federal or State law, such that they have a substantial illegal purpose in order to retain their status as an eligible employer under the PSLF program.  *See* William D. Ford Direct Loan (Direct Loan) Program, 90 Fed. Reg. 48966, 48966 (Oct. 31, 2025) ("PSLF Final Rule").  The PSLF Final Rule details the substantive certification requirements that employers must satisfy to retain PSLF eligibility, the process by which the Department will assess and enforce compliance with the Rule, the reconsideration tools available to employers following an ineligibility determination, and the procedure employers may follow to re-establish PSLF eligibility.

Plaintiffs are 501(c)(3) organizations that employ individuals who are using their employment with Plaintiffs to quality for PSLF benefits.  Although Plaintiffs concede that none of their activities violate any Federal or State laws, they nonetheless argue that the PSLF Final Rule is contrary to the Administrative Procedure Act ("APA") and the Constitution and request that it be vacated.  As a threshold matter, Plaintiffs lack standing and their claims are unripe because their allegations rest on speculative fears of future enforcement and unreasonable misinterpretations of the challenged regulation.  Taking as true Plaintiffs' assertions that they are not violating Federal or State laws, the PSLF Final Rule could not be used to disqualify them for PSLF benefits.  Because Plaintiffs cannot identify any actual or imminent loss of any Federal benefits, any investigation, or any enforcement action traceable to the Department, they do not have standing under Article III.

Plaintiffs' claims also fail on the merits.  The Department promulgated the PSLF Final

1

Rule pursuant to its broad authority to issue regulations governing the programs it administers and in doing so, properly discharged its obligation "to encourage borrowers to enter occupations that improve their communities and advance the public good while also guarding against the diversion of Federal benefits to organizations that harm their fellow Americans by engaging in illegal conduct." PSLF Final Rule at 48968. And spanning nearly 40 pages, the PSLF Final Rule easily clears the APA's deferential arbitrary and capricious standard through its extensive and reasoned explanation for the Rule.

The constitutional claims also fail because Plaintiffs have not carried their heavy burden in asserting facial Due Process and First Amendment challenges to the PSLF Final Rule. In particular, the vagueness doctrine has little bite because the provisions do not declare any new unlawful conduct, but instead merely require compliance with existing legal obligations under separate Federal and State laws that are clearly referenced in the PSLF Final Rule. The First Amendment arguments are similarly meritless. The PSLF Final Rule does not target constitutionally protected speech, but instead only clarifies the consequences of engaging in conduct that is already illegal.

Accordingly, Plaintiffs' Motion should be denied, Defendants' Cross-Motion should be granted, and final judgment should be entered for Defendants.

## BACKGROUND

### I.    Statutory and Regulatory Background

The College Cost Reduction and Access Act ("CCRAA") amended section 455(m) of the Higher Education Act of 1965 ("HEA") to establish the PSLF program. *See* Pub. L. No. 110–84, 121 Stat. 784, 800 (2007). Under the PSLF program, the Secretary of Education "shall cancel the balance of interest and principal due . . . for a borrower who . . . has made 120 monthly payments on the eligible Federal Direct Loan." 20 U.S.C. § 1087e(m)(1)(A). To be eligible, the borrower must be "employed in a public service job at the time of such forgiveness." *Id*. § 1087e(m)(1)(B). Public service job means:

i) a full-time job in emergency management, government (excluding time served

2

as a member of Congress), military service, public safety, law enforcement, public health (including nurses, nurse practitioners, nurses in a clinical setting, and full-time professionals engaged in health care practitioner occupations and health care support occupations, as such terms are defined by the Bureau of Labor Statistics), public education, social work in a public child or family service agency, public interest law services (including prosecution or public defense or legal advocacy on behalf of low-income communities at a nonprofit organization), early childhood education (including licensed or regulated childcare, Head Start, and State funded prekindergarten), public service for individuals with disabilities, public service for the elderly, public library sciences, school-based library sciences and other school-based services, or at an organization that is described in section 501(c)(3) of title 26 and exempt from taxation under section 501(a) of such title; or (ii) teaching as a full-time faculty member at a Tribal College or University as defined in section 1059c(b) of this title and other faculty teaching in high-needs subject areas or areas of shortage (including nurse faculty, foreign language faculty, and part-time faculty at community colleges), as determined by the Secretary.

*Id.* § 1087e(m)(3)(B).

Pursuant to its authority to promulgate rules and regulations governing the programs it administers—*see* 20 U.S.C. § 1221e-3—the Department promulgated a PSLF regulation that became effective on July 1, 2009. *See* Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 73 Fed. Reg. 63232 (Oct. 23, 2008) (34 C.F.R. § 685.219). Since its original promulgation, § 685.219 has been amended seven times. *See* 74 Fed. Reg. 55972 (Oct. 29, 2009); 77 Fed. Reg. 76414 (Dec. 28, 2012); 80 Fed. Reg. 67204 (Oct. 30, 2015); 85 Fed. Reg. 49798 (Aug. 14, 2020); 87 Fed. Reg. 65904 (Nov. 1, 2022); 88 Fed. Reg. 43064 (July 6, 2023); 88 Fed. Reg. 43820 (July 10, 2023).

On August 18, 2025, the Department published a notice of proposed rulemaking ("PSLF NPRM"), reflecting proposed amendments to § 685.219. *See* William D. Ford Federal Direct Loan (Direct Loan) Program, 90 Fed. Reg. 40154 (Aug. 18, 2025). On October 31, 2025, after receiving 13,989 comments in response to the PSLF NPRM, the Department issued the PSLF Final Rule. *See* 90 Fed. Reg. 48966.

The PSLF Final Rule amends § 685.219 to exclude from the PSLF program "employers that engage in specific enumerated illegal activities such that they have a substantial illegal purpose"; define "obligations and processes tied to making such a determination of an

employer," including employers' obligation to certify that they do not participate in activities that have a substantial illegal purpose; "clarify[] that borrowers will receive full credit for work performed, until the effective date of the Secretary's determination that an employer is no longer a qualifying employer under the rule"; and "establish[] methods for an employer to regain eligibility following a determination of ineligibility by the Secretary." *Id*. at 48966.

The PSLF Final Rule explains that the Department, through an "unbiased adjudicator," will weigh "any evidence presented showing that an organization's activities violated any laws and make a determination if those violations rise to the level of substantial illegal purpose." PSLF Final Rule at 48970-71. The Department will consider whether an "employer has a substantial illegal purpose by a preponderance of the evidence after weighing the employer's illegal conduct, narrowly focusing on only the illegal conduct enumerated in the regulation." *Id*. at 48987; *see also id*. at 48973 ("[T]he Secretary will need to find that it is more likely than not that an organization's illegal activity is more than an insubstantial part of its activities that advance an illegal purpose."). Specifically, "the activities included within the definition of substantial illegal purpose are explicit violations of either State or Federal law, and as such, are actions which inherently do not serve the public good." *Id*. at 48988. "When reviewing an employer's conduct, the Secretary will consider any reliable evidence, including countervailing evidence provided by the employer." *Id*. at 48971. Employers deemed ineligible under the PSLF Final Rule may seek reconsideration of the Department's determination—they "may seek review, submit documentation, and receive written explanations of the Secretary's determination." *Id*. "Organizations that want to avoid ineligibility altogether may suggest a corrective action plan to the Secretary in tandem with any submission under the employer reconsideration process" and "if the Secretary approves a corrective action plan for the organization, it can regain eligibility on an expedited timeline." *Id*. at 48990.

## II.    Factual Background

Plaintiffs are four 501(c)(3) organizations that "currently employ individuals who are using their employment with Plaintiffs to quality for PSLF or rely on the availability of PSLF in

recruiting staff." *See* Compl. ¶¶ 38-39, ECF No. 1.  Plaintiffs allege that "[a]though none of [their] activities violate any federal or state laws, Plaintiffs can have no certainty about whether the Secretary will determine their activities have a substantial illegal purpose within the meaning of the Rule, or will investigate their work and require them to prove the lawfulness of their work." *Id*. ¶ 41.

Plaintiffs' Complaint for Declaratory and Injunctive Relief asserts five counts: (1) Count I—alleging that the PSLF Final Rule is contrary to law under the APA, *id*. ¶¶ 47-49; (2) Count II—alleging that the PSLF Final Rule is in excess of statutory authority under the APA, *id*. ¶¶ 50-52; (3) Count III—alleging that the PSLF Final Rule is arbitrary and capricious, *id*. ¶¶ 53-54; (4) Count IV—alleging that the PSLF Final Rule violates the Due Process Clause, ¶¶ 55-60; and (5) Count V—alleging that the PSLF Final Rule violates the First Amendment, *id*. ¶¶ 61-65.

Plaintiffs subsequently filed a Motion for Summary Judgment.  Pls.' Mot. for Summ. J., ("Pls' Mot."), ECF No 18.  Plaintiffs seek a declaration that the PSLF Final Rule violates the APA and the Constitution and request that the Rule be vacated.  *Id*. at 36.

## LEGAL STANDARD

### I.    Dismissal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests whether the court has subject-matter jurisdiction over an action.  It is well-settled that the party invoking federal jurisdiction bears the burden of proving its existence.  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  In evaluating a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a court must assume the truth of all factual allegations and must review "the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  Nevertheless, "the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the [c]ourt accept plaintiff's legal conclusions."  *Disner v. United States*, 888 F. Supp. 2d 83, 87

(D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).

Finally, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss under Rule 12(b)(6), the Court will ordinarily "accept as true all of the factual allegations contained in the complaint," *Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (citation omitted), and construe it in plaintiff's favor. *Porter v. CIA*, 778 F. Supp. 2d 60, 65 (D.D.C. 2011). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

## II.    Summary Judgment Standard

In an APA case, the Federal Rule of Civil Procedure 56(a) summary judgment standard, requiring the court to determine if there is a genuine dispute of material fact, does not apply. Rather, the district court sits as an appellate tribunal, reviewing the administrative record. "[S]ummary judgment 'serves as a mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review.'" *See Advoc. Christ Med. Ctr. v. Azar*, No. 17-cv-1519 (TSC), 2022 WL 2064830, at *5 (D.D.C. June 8, 2022) (quoting *Select Specialty Hosp.-Akron, LLC v. Sebelius*, 820 F. Supp. 2d 13, 21 (D.D.C. 2011)), *aff'd*, 80 F.4th 346 (D.C. Cir. 2023).

## ARGUMENT

**I.    Dismissal Is Warranted Because Plaintiffs Cannot Satisfy Article III Standing and Ripeness Requirements.**

Threshold jurisdictional defects plague Plaintiffs' claims and establish that Plaintiffs cannot reach—let alone succeed on—the merits.  Plaintiffs lack standing because their claims are based on speculative fears of future enforcement and unreasonable interpretations of the PSLF Final Rule.  For similar reasons, their claims are unripe.

### A.  Plaintiffs Cannot Establish Standing.

As a threshold matter, Plaintiffs' claims should be dismissed because they lack the "irreducible constitutional minimum of standing."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  To meet that constitutional requirement, Plaintiffs must establish that they "[have] suffered, or will suffer, an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).  Only "actual or imminent" injuries are redressable for Article III purposes.  *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024).  Allegations that are "too speculative" or merely assert "possible future injury" do not suffice.  *Clapper*, 568 U.S. at 409 (emphasis and quotation omitted).  Plaintiffs' facial challenges to the PSLF Final Rule do not satisfy Article III's jurisdictional requirements.

Plaintiffs assert that as 501(c)(3) employers, they *may* be impacted if, following the enforcement process, the Department ultimately determines that they have a substantial illegal purpose and are excluded from the PSLF program.  *See* Pls' Mot. at 14.  Plaintiffs state that they are not engaged in unlawful conduct, thereby conceding that the PSLF Final Rule will not require them to "make significant changes" to avoid being "exposed to the imposition of strong sanctions." *Abbott Labs v. Gardner*, 387 U.S. 136, 154 (1967) (holding that pre-enforcement standing is satisfied where the regulated entity must make significant changes to its conduct to avoid regulatory sanctions), *abrogated on different grounds by Califano v. Sanders*, 430 U.S. 99

(1977).  Furthermore, "pre-enforcement standing" requires some evidence that the would-be enforcer reads the relevant statute to apply to the plaintiff or his desired conduct.  *Cf. Seegars v. Gonzales*, 396 F.3d 1248, 1255 (D.C. Cir. 2005) (To establish pre-enforcement standing, plaintiffs must show "prior threats against them or any characteristics indicating an especially high probability of enforcement against them").

The Department has not made any indication that Plaintiffs will be (or are likely to be) the target of any enforcement activity.  *See id.* ("[T]here is nothing in the record to indicate that [the plaintiff] has been personally threatened with prosecution or that his prosecution has 'any special priority' for the government." (quoting *Navegar, Inc. v. United States,* 103 F.3d 994, 1001 (D.C. Cir. 1997)).  To the contrary, the Department has emphasized that future determinations as to any 501(c)(3) organization "will be objective and based on evidence such as judgments of State or Federal courts, guilty pleas of the organization, or statements by the organization admitting that it engaged in such conduct (such as in a settlement agreement)." PSLF Final Rule at 48973.  Indeed, the PSLF Final Rule mandates a multi-step enforcement process—it "makes clear that employer disqualification requires the Department to find that an employer has a substantial illegal purpose by a preponderance of the evidence after weighing the employer's illegal conduct, narrowly focusing on only the illegal conduct enumerated in the regulation."  *Id.* at 48987.  "Employers may seek review, submit documentation, and receive written explanations of the Secretary's determination."  *Id.* at 48971; *id.* at 48977 ("[E]mployers will be provided with a notice, a transparent record, and an opportunity to review, respond, and rebut the Department's findings to a neutral adjudicator, thereby ensuring that due process is afforded to all impacted stakeholders and applied fairly and consistently.").  Moreover, "[o]rganizations that take corrective action, demonstrate compliance, and return to lawful operations should have the opportunity to be reinstated as an eligible employer" within 10 years. *Id.* at 48990.  "[I]f the Secretary approves a corrective action plan for the organization, it can regain eligibility on an expedited timeline."  *Id.*

In response to comments to the PSLF NPRM, the PSLF Final Rule specifically disavows

that certain groups—similar to Plaintiffs—will be subject to exclusion from the PSLF program pursuant to the PSLF Final Rule. *See* PSLF Final Rule at 48974 ("Federal law does not prohibit individuals from advocating for illegal immigrants or representing them in Federal immigration court. Organizations that do not aid or abet in criminal activity will not be disqualified from participating in the PSLF program, while organizations that participate in unlawful behavior may have a substantial illegal purpose depending on the nature of the offenses."); *id*. at 48978 ("The Department would have no basis to remove eligibility from nonprofits engaged in work related to immigrant communities, LGBTQ+ individuals, or racial justice if those organizations are following the law."); *id*. at 48980 ("The Department rejects the idea that ordinary, lawful assistance such as legal advice, medical care, or humanitarian support could trigger PSLF disqualification."); *id*. at 48981 ("Medical providers performing activities within the bounds of Federal and State law will not be affected.").

Nothing in the PSLF Final Rule indicates that the Department will prevent Plaintiffs "from engaging in programs in furtherance of their missions." Pls' Mot. at 14. Any enforcement thus depends on Plaintiffs' own compliance with Federal and State laws, *see* PSLF Final Rule at 48973, not on potential future action by the Department. Indeed, the PSLF Final Rule repeatedly advises that "[o]rganizations that abide by Federal law and the laws of the State in which they operate will not be subject to potential loss of eligibility. PSLF employer eligibility is not conditioned on political alignment or conformity with any administration policies." *Id*. Any purported harms stemming from Plaintiffs' speculative fears are neither reasonable nor traceable to any action by the Department but instead result from their own "compliance preparations ahead of the Rule's July 1, 2026, effective date," Pls' Mot. at 16. *See Clapper*, 568 U.S. at 416 (Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."). And Plaintiffs' reliance on the "monetary costs to comply with the Rule," Pls' Mot. at 16, fare no better because they "cannot spend [their] way into standing simply by expending money to gather information and advocate against the [Department's] action." *All. for Hippocratic Med.*, 602 U.S. at 370.

9

In sum, Plaintiffs' asserted injuries rest on speculation regarding future enforcement and unsupported interpretations of the PSLF Final Rule. They identify no actual or imminent loss of PSLF benefits and no imminent or likely enforcement actions. Indeed, Plaintiffs concede that none of their activities violate any Federal or State laws. *See* Compl. ¶ 41. Plaintiffs' speculation is insufficient for pre-enforcement standing and warrants dismissal of their claims.

**B. Plaintiffs' Claims are not Ripe.**

Article III requires that the Court only adjudicate those claims that are ripe for review. A claim is not ripe if it is "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (citation omitted). "Determining whether administrative action is ripe for judicial review requires [courts] to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (citation omitted).

A claim is not fit "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted). Plaintiffs' claims are not fit for review because any alleged consequence is entirely speculative and contingent on future events, including Plaintiffs' own participation in illegal conduct under Federal and State law, the completion of enforcement action resulting in a determination that a Plaintiff has a substantial illegal purpose rendering it ineligible for PSLF benefits, and unsuccessful reconsideration proceedings. Until the Department issues a final decision finding that a Plaintiff is ineligible for PSLF benefits, Plaintiffs' concerns about losing funding are hypothetical and not grounded in any concrete agency action.

If the "future events contemplated by the [Plaintiffs] are too speculative and the hardship is too abstract," then the claims are not ripe for review. *United States v. District of Columbia*, 44 F. Supp. 2d 53, 58 (D.D.C. 1999) (citing *Texas*, 523 U.S. at 301). Plaintiffs identify no imminent injury stemming from the PSLF Final Rule, only an abstract fear that the Rule might be enforced in ways that remove their PSLF benefits despite their compliance with Federal and

State laws.  But such fears are unsupported by the plain text of the PSLF Final Rule and wholly contingent on future agency decisions that may never occur.  Plaintiffs' claims are not ripe and should, therefore, be dismissed.

## II.    Defendants are Entitled to Summary Judgment on Plaintiffs' APA Claims.

Even if the Court had subject matter jurisdiction over Plaintiffs' claims, which Defendants contest, the APA claims nonetheless fail on the merits because the PSLF Final Rule is within the bounds of the Department's authority under the HEA and the Rule is not arbitrary or capricious.

### A.  The PSLF Final Rule is Neither Contrary to the HEA Nor in Excess of HEA Authority.

Under the APA, an agency's decision must be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(A), (C).  Plaintiffs argue that the PSLF Final Rule "is contrary to law and beyond the Department's statutory authority because, by statute, all 501(c)(3) organizations, without qualification, are eligible to participate in PSLF."  Pls' Mot. at 17.  This argument misconstrues the Department's statutory authority under the HEA to administer and regulate the PSLF program.

The HEA affords the Department broad authority to administer the PSLF program.  *See* 20 U.S.C. § 1221e-3 ("The Secretary, in order to carry out functions otherwise vested in the Secretary by law or by delegation of authority pursuant to law, and subject to limitations as may be otherwise imposed by law, is authorized to make, promulgate, issue, rescind, and amend rules and regulations governing the manner of operation of, and governing the applicable programs administered by, the Department."); *id.* § 1082(a)(1) ("In the performance of, and with respect to, the functions, powers, and duties, vested in him by this part, the Secretary may . . . prescribe such regulations as may be necessary to carry out the purposes of this part . . . ."); *id.* § 3441(a)(2)(C) (transferring HEA authority to the Department Secretary); *id.* § 3474 ("The Secretary is authorized to prescribe such rules and regulations as the Secretary determines

necessary or appropriate to administer and manage the functions of the Secretary or the Department."); *id.* § 3471(a) ("In carrying out any function transferred by this chapter, the Secretary, or any officer or employee of the Department, may exercise any authority available by law . . . .").

The Department has properly discharged this statutory authority in promulgating the PSLF Final Rule, which ensures that, in accordance with the statutory text and purpose, only professions that advance the public interest are included in the list of PSLF-eligible "public service job[s]" under Section 1087e(m)(3)(B). *See* 34 C.F.R. § 685.219(a) ("The Public Service Loan Forgiveness Program is intended to encourage individuals to enter and continue in full-time public service employment by forgiving the remaining balance of their Direct loans after they satisfy the public service and loan payment requirements of this section.").

The statute defines a "public service job" eligible under the PSLF program by listing 18 distinct categories of jobs. *See* 20 U.S.C. § 1087e(m)(3)(B). The overlap among the categories provides insight into the types of jobs Congress intended to designate as PSLF eligible. *Cf. Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) ("[A] word is known by the company it keeps (the doctrine of *noscitur a sociis*)."). For example, military service, law enforcement, public library sciences, and public education are distinct categories that are also included within the broad government category. *See* 20 U.S.C. § 1087e(m)(3)(B). There is also overlap between the public interest law services category and the Section 501(c)(3) category. *Id.* The PSLF Final Rule merely ensures that this definition is consistent with the broader statutory text and purpose. Plaintiffs suggest that "Congress conclusively resolved the question of which employers sufficiently advance the public interest to warrant inclusion in PSLF: *all* employers that fall within the enumerated criteria, including all 501(c)(3) organizations." Pls' Mot. at 19 (emphasis in the original). But courts are "reluctant to treat statutory terms as surplusage," *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citation modified), and Plaintiffs' proposed reading of the statute assumes that Congress's enumeration of "public service job" categories was deliberately redundant, *see* Pls' Mot. at 19.

12

The PSLF Final Rule makes sense of these overlapping categories by properly concluding that "Congress provided for a long list of eligible professions to broadly ensure that" only those "professions that advance the public interest were included in the list." PSLF Final Rule at 48972. The PSLF Final Rule further concludes "that Congress would not want PSLF benefits to be received by employees of organizations that the Department knows are not serving the public interest," which "includes organizations that are breaking the law . . . contrary to the public interest," because "Congress would not want to reward [such] organizations . . . by indirectly subsidizing their organizations by providing loan forgiveness to their employees." *Id*. This interpretation is consistent with the text and purpose of the PSLF statute. *See King v. Burwell*, 576 U.S. 473, 498 (2015) ("A fair reading of legislation demands a fair understanding of the legislative plan.").

Moreover, Plaintiffs' reliance on *Western Minnesota Municipal Power Agency v. FERC*, 806 F.3d 588 (D.C. Cir. 2015), is misplaced. *See* Pls' Mot. at 18. In that case, the Court of Appeals applied *Chevron*'s two-step framework in determining whether an agency had the authority to issue a regulation where "Congress ha[d] spoken directly to the question at issue," leaving no gap for the agency to fill through regulation. *Western Minnesota*, 806 F.3d at 592. The Court's analysis focused on the statute's use of the term "shall." *See id*. Here, although the PSLF statute provides that the Secretary "shall" cancel the balance of eligible loans once certain conditions are met, the PSLF Final Rule does not speak to or attempt to regulate this provision. *See* 20 U.S.C. § 1087e(m)(1). Instead, the PSLF Final Rule provides clarity and uniformity as to the term " "public service job." *Id*. § 1087e(m)(3)(B). This is a separate provision that does not include the type of mandatory language at issue in Western Minnesota and thus does not require the same type of analysis. As previously explained, the "public service job" definition contains a series of overlapping jobs. The PSLF Final Rule merely "aims to better align PSLF eligibility with the program's statutory intent: to encourage Americans to pursue public service careers that improve their communities." PSLF Final Rule at 48967. It accomplishes this goal by reconciling the definition of "public service job" in a manner that is aligned with the statutory

13

text and purpose—to ensure that the Department is not indirectly subsidizing employers engaged in illegal activities that harm fellow Americans. *Id.*; *see also id.* at 48972 ("Congress provided for a long list of eligible professions to broadly ensure that all professions that advance the public interest were included in the list. This provides an important clue in interpreting the underlying statute, as the Department must presume that Congress would not want PSLF benefits to be received by employees of organizations that the Department knows are not serving the public interest. This includes organizations that are breaking the law, which is contrary to the public interest.").

In sum, "the best reading of [the PSLF] statute is that it delegates discretionary authority to" the Department and the Court's role is to "recogniz[e] constitutional delegations, fix[] the boundaries of the delegated authority, and ensur[e] the agency has engaged in reasoned decisionmaking within those boundaries." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024) (citation modified). The HEA grants the Department "broad, discretionary authority" to issue regulations over the programs it administers. *See Cboe Glob. Markets, Inc. v. Sec. & Exch. Comm'n*, 155 F.4th 704, 713 (D.C. Cir. 2025). The Department acted within the bounds of this authority in regulating the meaning of "public service job" under the program it administers.

The PSLF Final Rule is consistent with the way the government regulates in similar contexts, and which has been upheld by the Supreme Court. For example, under the illegality doctrine, the Internal Revenue Service administers the Internal Revenue Code by revoking the tax-exempt status of organizations that engage in activities that are illegal or otherwise contrary to public policy. *See e.g., Bob Jones Univ. v. United States*, 461 U.S. 574, 591 (1983) (holding that an organization may be denied tax-exempt status if its purposes or activities are illegal or otherwise contrary to public policy); *Church of Scientology of Cal. v. Comm'r*, 83 T.C. 381 (1984) (upholding revocation of tax-exempt status for a religious organization because of its conspiracy to defraud the United States, which violated established public policy).

As the PSLF Final Rule explained, application of the illegality doctrine "demonstrate[s] that the Department is implementing established legal standards when determining whether

organizations are engaging in public service by examining whether they engage in activities that are illegal such that they have a substantial illegal purpose." PSLF Final Rule at 48973-74. These actions, like those taken by the IRS, do not amount to Executive Branch overreach. The PSLF Final Rule draws on the Department's statutory authority to regulate the PSLF program and to ensure "sound financial stewardship of government programs." *Id.* at 48999. Contrary to Plaintiffs' assertions, the Department does not purport to "strip tax-exempt status from organizations," Pls' Mot. at 21, or "inquire into" IRS matters, *id*. at 21-22. The Department's reliance on the illegality doctrine only demonstrates that its public policy considerations are rooted in the long-standing government practice to address and deter illegal activity as a matter of policy. *Cf. NLRB v. Noel Canning*, 573 U.S. 513, 524 (2014) (placing "great weight" on the Executive's historical practice). The Department properly relies on its authority under the HEA to promulgate the PSLF Final Rule.

**B. The PSLF Final Rule is Not Arbitrary or Capricious.**

The scope of APA review is narrow and deferential, and a court cannot substitute its judgment for that of the agency. *See FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). A decision is arbitrary and capricious only when the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency," or the decision "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm*, 463 U.S. at 43.

The PSLF Final Rule plainly meets the deferential APA standard. The PSLF Final Rule explains that its objective is only to "exclude employers that engage in specific enumerated illegal activities such that they have a substantial illegal purpose." PSLF Final Rule at 48966; *id*. at 48967 ("The Department, in this final rule, establishes that to be considered a qualifying employer for purposes of the PSLF program, an organization must not engage in illegal activity such that it has a substantial illegal purpose. Organizations that break the law such that they

have a substantial illegal purpose are actively harming the public good.  This rule prevents

Federal funds from subsidizing harmful illegal activities through a program designed to reward

public service." (internal citation omitted)); *id*. at 48967 ("[T]he rule will ensure that  the

Department is not indirectly subsidizing employers engaged in activities that have a

substantial illegal purpose that harm fellow Americans.").

The PSLF Final Rule clearly sets forth the procedure that the Department will follow to

advance that objective:

> The Secretary will weigh any evidence presented showing that an organization's
> activities violated any laws and make a determination if those violations rise to
> the level of substantial illegal purpose. The Secretary will look to see if there is a
> pattern of behavior by the organization, the gravity of the violation, and generally
> exclude evidence of technical violations of law.  When reviewing an employer's
> conduct, the Secretary will consider any reliable evidence, including
> countervailing evidence provided by the employer.

*Id*. at 48970-71.  The PSLF Final Rule also explains the recourse available to employers

upon the Department's determination that they have a substantial illegal purpose:

> [E]mployers will be provided with a notice, a transparent record, and an
> opportunity to review, respond, and rebut the Department's findings to a neutral
> adjudicator, thereby ensuring that due process is afforded to all impacted
> stakeholders and applied fairly and consistently.  The rule also provides an
> opportunity for employers to regain eligibility by following a corrective action
> plan to come into compliance after a loss of eligibility.  If the processes
> established in this final rule do not resolve a concern, employers can seek judicial
> review of the Department's decisions in Federal court.

*Id*. at 48977; *see also id*. at 48971 ("This final rule also establishes a reconsideration process for

employers when they have been determined ineligible.  Employers may seek review, submit

documentation, and receive written explanations of the Secretary's determination.  This approach

ensures transparency, protects taxpayers, and maintains borrower confidence.").

Plaintiffs claim that the PSLF Final Rule does not have a rational connection to the

factual record, Pls' Mot. at 23, but the connection between the Rule's objective and its direction

is plain.  "The Department will administer the PSLF program in a manner that provides

borrowers with the benefits required by statute, while ensuring the responsible stewardship of

16

taxpayer resources." PSLF Final Rule at 48973. "[W]hen employers break the law, such that the organization has a substantial illegal purpose, the Department may take action to safeguard the integrity of the PSLF program by removing eligibility from that employer." *Id.*; *see also id.* at 48969 ("The Department agrees with the commenters and appreciates their support. The PSLF program has faced significant challenges over the years, including high denial rates, administrative barriers, and widespread confusion among borrowers. This final rule delivers clarity, fairness, and accountability for borrowers and qualifying employers under PSLF. It strengthens transparency and ensures PSLF is restored to its intended focus on public service for the betterment of communities. This final rule ends the subsidization of employment at organizations that are not only failing to serve the public interest but are actually doing harm by engaging in illegal conduct."); *id.* at 48999 ("Borrowers and taxpayers alike deserve a program that is transparent, fair, and protects Federal investment. The Department will enforce the law firmly, while making sure compliance is efficient, lawful, and aligned with statutory obligations.").

At the same time, the Department took reasonable steps to achieve its objectives. "Organizations that abide by Federal law and the laws of the State in which they operate will not be subject to potential loss of eligibility." *Id.* at 48973. If—through the enforcement process— the Secretary finds that an organization has engaged in illegal activities such that it has a substantial illegal purpose, the PSLF Final Rule "ensures employers are notified and given an opportunity to respond before any adverse decision by the Secretary." *Id.* at 48966. The PSLF Final Rule establishes a process by which organizations may regain eligibility, including an expedited mechanism. *Id.* at 48989-90. This calibrated approach easily satisfies the APA's reasonableness standard and should be afforded adequate deference. *See Green Country Mobilephone, Inc. v. FCC*, 765 F.2d 235, 237 (D.C. Cir. 1985) (courts "will not second-guess a reasoned determination by an agency that the advantages of rigidity outweigh the disadvantages in a given procedural circumstance."); *AD HOC Telecom. Users Comm. v. FCC*, 572 F.3d 903, 908 (D.C. Cir. 2009) (arbitrary and capricious review "is particularly deferential in matters . . .

which implicate competing policy choices").

Plaintiffs argue that the Department's justifications are unconvincing.  *See* Pls' Mot. at 23-24.  But the Department need only articulate "a rational connection between the facts found and the choice made."  *State Farm*, 463 U.S. at 43 (citation omitted).  And the agency appropriately relies on its experience in exercising its judgment.  *See id.* at 52 ("It is not infrequent that the available data does not settle a regulatory issue[,] and the agency must then exercise its judgment in moving from the facts and probabilities on the record to a policy conclusion.").  Thus, a reviewing court's task is only to determine whether an agency has engaged in "reasoned decisionmaking."  *Michigan v. EPA*, 576 U.S. 743, 750 (2015) (citation omitted); *see Prometheus Radio Project*, 592 U.S. at 423 ("A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision").  The Department's stated interest in administering the PSLF program "to encourage lawful activities that promote the public good," *see* PSLF Final Rule at 48976, its imposition of "defined parameters of the rule [to] help the Department avoid arbitrary enforcement of the rule," *id*. at 48977, and its careful weighing of reliance interests, *id*. at 48984, satisfy the arbitrary and capricious standard.  *See Petal Gas Storage, LLC v. FERC*, 496 F.3d 695, 703 (D.C. Cir. 2007) (noting that under the arbitrary-and-capricious standard, the agency was "not required to choose the best solution, only a reasonable one"); *Deaf Smith Cnty. Grain Processors, Inc. v. Glickman*, 162 F.3d 1206, 1215 (D.C. Cir. 1998) (noting that the arbitrary-and-capricious standard demands a reasonable decision, not the best or most reasonable decision).

Indeed, the PSLF Final Rule on its face considered the legal arguments Plaintiffs now raise.  For example, Plaintiffs argue that the PSLF Final Rule improperly imputes the criminal "aiding and abetting" standard onto civil violations.  *See* Pls' Mot. at 25-29.  But the PSLF Final Rule makes clear that "[o]rganizations that do not aid or abet in *criminal* activity will not be disqualified from participating in the PSLF program."  PSLF Final Rule at 48974 (emphasis added); *id*. at 48980 ("The concept of aiding and abetting is purposefully broad as it prohibits

assisting in numerous types of criminal activity, but it is well understood by courts and the public."); *id*. at 49000 (applying the criminal aiding and abetting standard under 18 U.S.C. § 2). The PSLF Final Rule explicitly disclaims that it is attempting to or has made any "substantive changes to the legality of certain actions," such as applying the criminal aiding and abetting to civil violations. *Id*. at 48974. Rather, the PSLF Final Rule clarifies the "consequences for breaking the law where an employer has a substantial illegal purpose." *Id*. On its face, the PSLF Final Rule only ascribes a substantial illegal purpose to an organization that aids or abets in criminal activity as prohibited by Federal or State law and does not in any way apply the criminal aiding and abetting standard to civil violations. *See id*. at 49000.

## III.    Plaintiffs' Constitutional Claims Fail as a Matter of Law.

Even if cognizable outside of the APA context, *see generally DeVillier v. Texas*, 601 U.S. 285, 291 (2024) ("Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts"), Plaintiffs' standalone constitutional challenges fail as a matter of law and should be dismissed for failure to state a claim. In the alternative, the Court should enter summary judgment in Defendants' favor.

As a threshold matter, Plaintiffs assert facial constitutional challenges to the PSLF Final Rule because they challenge the Rule "as a whole, rather than as to particular applications." *Nat'l Urb. League v. Trump*, 783 F. Supp. 3d 61, 88 (D.D.C. 2025) (quoting *Moody v. NetChoice*, *LLC*, 603 U.S. 707, 717 (2024)). "A plaintiff cannot succeed on a facial challenge unless he establishes that no set of circumstances exists under which the law would be valid, or he shows that the law lacks a plainly legitimate sweep." *Moody*, 603 U.S. at 723 (citation modified). Plaintiffs, here, have not carried their "heavy burden of showing that 'no set of circumstances exists under which the' regulation 'would be valid.'" *Nat'l Urb. League*, 783 F. Supp. 3d at 87 (quoting *United States v. Hansen*, 599 U.S. 762, 769 (2023)). As in *National Urban League*, Plaintiffs' Complaint and Motion begins and ends with a sweeping request that the PSLF Final Rule be vacated without any attempt to cabin that relief to Plaintiffs or to explain that the PSLF Final Rule is invalid under all circumstances. *Id*. at 89. For example, Plaintiffs

have failed to show how the PSLF Final Rule's exclusion of organizations that support foreign terrorist organizations or engage in interstate trafficking of children in any way violates the Constitution.  *See* PSLF Final Rule at 48981.

The appropriate posture for due process vagueness challenges is as-applied.  That is because "[f]acial challenges chafe against the ordinary rule that courts 'handle constitutional claims case by case, not en masse.'"  *Id*. (quoting *Moody*, 603 U.S. at 723).  "That preference makes sense because facial challenges often rest on speculation about the law's coverage and its future enforcement."  *Id*. (citation modified).   And "[o]bjections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk."  *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988); *see also Carman v. Yellen*, 112 F.4th 386, 402 (6th Cir. 2024) (noting that plaintiffs were unable to identify "a case when a preenforcement-facial-vagueness challenge was ripe, presumably because such cases benefit from factual development and applications of statutory provisions to particular scenarios").  Because Plaintiffs have not met the rigorous standard for asserting pre-enforcement facial challenges to the PSLF Final Rule, their constitutional claims fail at the outset.

### A.  The PSLF Rule is Not Impermissibly Vague.

Plaintiffs' due process claim also fails on the merits.  The "first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in liberty or property."  *NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 41 (D.C. Cir. 2015) (citation omitted).  "The procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit': 'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire'" and "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."   *Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 756 (2005) (citation omitted).  "The Due Process Clause only provides protection if the statute or implementing regulations place 'substantive limits on official

discretion." *Am. Ass'n of Physics Teachers, Inc. v. Nat'l Sci. Found.*, 804 F. Supp. 3d 45, 74 (D.D.C. 2025) (citation modified).

The district court in *American Bar Ass'n v. United States Department of Education*, 370 F. Supp. 3d 1 (D.D.C. 2019), correctly applied this straightforward requirement. In that case, the American Bar Association claimed that "the Department violated [its] due process rights under the Fifth Amendment when it retroactively revoked [its] status as a PSLF-eligible employer, thus compromising its ability to attract and retain employees." *Id*. at 36 (citation modified). The court concluded that the "PSLF statute does not create any property rights for the ABA" because it "grants an entitlement to debt relief for borrowers determined to be eligible, but it creates no legitimate claim of entitlement to a property interest protected by the Fifth Amendment on the ABA's part." *Id*. at 36-37. Plaintiffs' attempt to distinguish this case misses the mark because the court explicitly considered and rejected the argument that employers have a constitutionally protected property interest in the PSLF program derived from their role and participation under the PSLF program, Pls' Mot. at 29-30—the PSLF statute only requires that the Department provide loan forgiveness to eligible borrowers and "[a]s an employer, the ABA has no such rights or obligations, since it has no possible claim to loan forgiveness." *Am. Bar Ass'n*, 370 F. Supp. 3d at 25. The PSLF statute does not proscribe any "rights or obligations" with respect to 501(c)(3) employer-organizations that gives rise to a protected property interest. *See id*.

Moreover, while the void-for-vagueness doctrine demands scrutiny of statutes and regulations that identify a new conduct for punishment, it has little bite with respect to the PSLF Final Rule, which simply requires that "[o]rganizations [] abide by Federal law and the laws of the State in which they operate." PSLF Final Rule at 48973. Plaintiffs thus have no legitimate concern that they will not be given a "reasonable opportunity to know what is prohibited." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

The PSLF Final Rule is clear about its limits: it seeks to ensure that PSLF benefits only flow to those organizations that comply with Federal and State laws. By its own terms, the PSLF Final Rule does not penalize any new conduct; it merely changes the consequences for violating

existing laws, which Plaintiffs do not challenge as unconstitutionally vague. *See* PSLF Final Rule at 49002. Because the PSLF Final Rule does not target any conduct that is not already illegal under Federal and State laws, all Plaintiffs must do is comply with those statutes and certify that compliance. *See id*. at 48993 ("In general, the Department believes that most employers will already be complying with the requirements of the rule because the employers already have an existing obligation to follow the law."). As such, Plaintiffs cannot show, as they must, that the PSLF Final Rule is "devoid of any standard of conduct" rendering it "vague to the point of unconstitutionality." *Psychas v. Dist. Dep't of Transp.*, No. CV 18-0081 (ABJ), 2019 WL 4644503, at *15 (D.D.C. Sep. 24, 2019); *Nat'l Urb. League*, 783 F. Supp. 3d at 96 ("Under that [certification] provision, counterparties and grant recipients must certify that they do not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws. So the incriminating fact is straightforward: is the counterparty violating federal antidiscrimination law? That is a true-or-false determination, and any difficulty in determining whether that fact has been proved in a case does not render the provision unconstitutionally vague." (internal quotation marks omitted)).

Additionally, the PSLF Final Rule is not vague in its articulation of the process by which the Department will enforce the Rule. *See* Pls' Mot. at 32-34. The PSLF Final Rule explains that its evaluation approach "ensures transparency, protects taxpayers, and maintains borrower confidence." PSLF Final Rule at 48971. To that end, an "unbiased adjudicator" who "has not prejudged the law or the facts" will "weigh any evidence presented showing that an organization's activities violated any laws" by "look[ing] to see if there is a pattern of behavior by the organization, the gravity of the violation, and generally exclude evidence of technical violations of law." *Id*. at 48970-71. The adjudicator will "consider any reliable evidence, including countervailing evidence provided by the employer." *Id*. at 48971. The adjudicator will determine whether the "employer has a substantial illegal purpose by a preponderance of the evidence after weighing the employer's illegal conduct, narrowly focusing on only the illegal conduct enumerated in the regulation." *Id*. at 48987. "Employers may seek review, submit

documentation, and receive written explanations of the Secretary's determination." *Id*. at 48971. And the PSLF Final Rule "also provides an opportunity for employers to regain eligibility by following a corrective action plan to come into compliance after a loss of eligibility." *Id*. at 48977. The PSLF Final Rule thus appropriately "defines to whom the requirements apply, the conduct that is prohibited and the consequence of engaging in illegal activities for an employer who qualifies in the PSLF program." PSLF Final Rule at 48977. This precision presents no "indeterminacy" that renders the PSLF Final Rule unconstitutionally vague. *See United States v. Williams*, 553 U.S. 285, 306 (2008).

In any future enforcement, Plaintiffs are free to defend themselves by maintaining that their conduct is lawful, or by advancing any applicable as-applied vagueness defenses. But none of that is remotely ripe, let alone a sound basis for preemptively enjoining the government from administering the PSLF statute in accordance with its statutory authority. *See supra* part I.

### B. The PSLF Final Rule Does Not Implicate the First Amendment.

Plaintiffs argue that the PSLF Final Rule "impermissibly attempts to silence disfavored speech on immigration and workplace diversity by threatening to revoke PSLF eligibility for organizations that lawfully express viewpoints that the Department disfavors." Pls' Mot. at 35. But the PSLF Final Rule is not focused on what organizations may *say* about any topic. Organizations remain entitled to adopt any viewpoint or policy preference because the PSLF Final Rule is "limited to ensuring that employers meet statutory requirements for lawful public service activities." *See* PSLF Final Rule at 48973.

A provision requiring parties "to certify that they do not violate federal laws that they are otherwise obligated to comply with does not chill protected speech." *Nat'l Urb. League*, 783 F. Supp. 3d at 103. As in *National Urban League,* Plaintiffs' "real concern is with the Executive Branch's interpretation of [relevant] law, not with the Certification Provision." *Id*. But "if the Certification Provision did not exist, Plaintiffs would still be subject to that federal law" and "if Plaintiffs believe that the Executive Branch has wrongly interpreted federal [] law, they can challenge that interpretation in a specific enforcement action." *Id*. (citing *Nat'l Rifle Ass'n of*

23

*Am. v. Vullo*, 602 U.S. 175, 198 (2024)).  To be sure, the PSLF Final Rule does not limit Plaintiffs' free speech by compelling or restricting their speech; they remain free to engage in protected speech that espouses any viewpoint they want, including advocating for whatever activities they prefer.  *See* PSLF Final Rule at 48973.  It simply restricts their ability to engage in illegal activities while also maintaining PSLF benefits—activities that would be illegal even without those benefits.  Such restrictions on illegal conduct do not violate the First Amendment. *See Cutter v. Wilkinson,* 423 F.3d 579, 588 (6th Cir. 2005) (conditioning receipt of federal funding on compliance with the Religious Land Use and Institutionalized Persons Act did not violate the First Amendment because recipients had "no constitutional right, much less a fundamental constitutional right, to limit the exercise of religion by inmates" in the first instance).

IV.    **Any Relief Should be Limited to the Parties Before the Court.**

Plaintiffs seek a complete vacatur of the PSLF Final Rule, but that remedy is not appropriate.  *See* Pls' Mot. at 36.  If the court's remedial order affects nonparties, it may only do so incidentally.  *See United States v. Texas*, 599 U.S. 670, 693 (2023) (Gorsuch, J., concurring); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("[N]either declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs.").  "This tracks the founding-era understanding that courts 'render a judgment or decree upon the rights of the litigant[s].'" *Texas*, 599 U.S. at 693 (Gorsuch, J., concurring) (quoting *Rhode Island v. Massachusetts*, 37 U.S. 657 (1838)).  This notion "ensures that federal courts respect the limits of their Article III authority to decide cases and controversies and avoid trenching on the power of the elected branches to shape legal rights and duties more broadly."  *Id.* at 693-94 (Gorsuch, J., concurring).

Even if the APA could be read to authorize vacatur of agency action,[1] "a district court

---

[1] Defendants acknowledge that the D.C. Circuit has held that vacatur is an available remedy under the APA.  *See, e.g.*, *United Steel v. Mine Safety Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019).  Defendants here preserve the argument that 5 U.S.C. § 706(2) does not authorize any particular form of relief; it merely directs a reviewing court to disregard "agency action, findings,

should think twice—and perhaps twice again—before granting such sweeping relief." *Id.* at 702 (Gorsuch, J., concurring) (citation omitted).  As the Supreme Court explained in *Trump v. CASA, Inc.*, there is no basis in equity for a universal injunction that goes beyond remedying the harms incurred by the plaintiffs who have brought the lawsuit.  606 U.S. 831, 856 (2025).  The Court has long recognized that "equitable relief must be limited to the inadequacy that produced [the] injury in fact" and "[a]ny remedy a judge authorizes must not be more burdensome [to the defendant] than necessary to redress the complaining parties." *Texas*, 599 U.S. at 702 (Gorsuch, J., concurring) (citation modified).  To grant universal relief under the auspices of vacatur "strains our separation of powers.  It exaggerates the role of the Judiciary in our constitutional order, allowing individual judges to act more like a legislature by decreeing the rights and duties of people nationwide." *Id.* at 703.  Accordingly, any equitable remedy applied in the nature of vacatur should apply only to the named Plaintiffs in this case. *See California v. Texas*, 593 U.S. 659, 672  (2021) (remedies "ordinarily operate with respect to specific parties" rather than "on legal rules in the abstract") (citations omitted); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (observing that the "general rule" is that equitable relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.") (citations omitted)).

## **CONCLUSION**

For all the reasons discussed herein, the Court should deny Plaintiffs' Motion, grant Defendants' Cross-Motion, and enter final judgment in Defendants' favor.

Dated:  March 9, 2026

                                            Respectfully submitted,

                                            BRETT A. SHUMATE
                                            Assistant Attorney General
                                            Civil Division

---

and conclusions" that it finds unlawful when resolving an individual APA challenge. *See Texas*, 599 U.S. at 693-703 (Gorsuch, J., joined by Thomas and Barrett, JJ., concurring in the judgment).

MICHELLE BENNETT
Assistant Branch Director
Federal Programs Branch

*/s/ Heidy L. Gonzalez*
HEIDY L. GONZALEZ
(FL Bar No. 1025003)
*Trial Attorney*
U.S. Department of Justice,
Civil Division, Federal Programs
1100 L Street, N.W.
Washington, DC  20005
Tel: (202) 598-7409
Email: heidy.gonzalez@usdoj.gov

*Attorney for Defendants*