APPEAL,CLOSED,TYPE−E

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: 1:25−cv−03860−AHA

ROBERT F. KENNEDY CENTER FOR JUSTICE AND HUMAN RIGHTS et al v. MCMAHON et al
Assigned to: Judge Amir H. Ali
Cause: 05:702 Administrative Procedure Act

Date Filed: 11/04/2025
Date Terminated: 07/02/2026
Jury Demand: None
Nature of Suit: 899 Administrative Procedure Act/Review or Appeal of Agency Decision
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**ROBERT F. KENNEDY CENTER FOR JUSTICE AND HUMAN RIGHTS**

represented by

**Aaron S. Ament**
NATIONAL STUDENT LEGAL DEFENSE NETWORK
1015 15th Street NW
Suite 600
Washington, DC 20005
(847) 722−7945
Email: aaron@nsldn.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chris Bryant**
NATIONAL STUDENT LEGAL DEFENSE NETWORK
1701 Rhode Island Ave NW
Washington, DC 20036
847−420−2149
Email: chris@defendstudents.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel A. Zibel**
NATIONAL STUDENT LEGAL DEFENSE NETWORK
1701 Rhode Island Avenue NW
Washington, DC 20036
202−734−7495
Email: dan@defendstudents.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric Rothschild**
NATIONAL STUDENT LEGAL DEFENSE NETWORK
1701 Rhode Island Avenue NW
Washington, DC 20036

610−203−2000
Email: eric@defendstudents.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam R. Pulver**
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street, NW
Washington, DC 20009
(202) 588−7790
Email: apulver@citizen.org
*ATTORNEY TO BE NOTICED*

**Cormac A. Early**
PUBLIC CITIZEN
1600 20th ST NW
Washington, DC 20009
202−588−7751
Email: cearly@citizen.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**AMERICAN IMMIGRATION COUNCIL** represented by **Aaron S. Ament**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chris Bryant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cormac A. Early**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel A. Zibel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric Rothschild**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam R. Pulver**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**THE DOOR – A CENTER FOR ALTERNATIVES, INC.** represented by

**Aaron S. Ament**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chris Bryant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel A. Zibel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric Rothschild**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam R. Pulver**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cormac A. Early**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**LEAGUE OF UNITED LATIN AMERICAN CITIZENS INSTITUTE, INC.** represented by

**Aaron S. Ament**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chris Bryant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cormac A. Early**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel A. Zibel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric Rothschild**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Adam R. Pulver**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**LINDA MCMAHON**
*in her official capacity as Secretary of the Department of Education*

represented by **Heidy L Gonzalez**
DOJ−Civ
1100 L St., N.W.
Ste #3528
Washington, DC 20005
202−598−7409
Email: heidy.gonzalez@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**UNITED STATES DEPARTMENT OF EDUCATION**

represented by **Heidy L Gonzalez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**OUR FAMILY COALITION**

represented by **Benjamin Pietro Marcus**
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont St.
Ste. 950
Boston, MA 02108
847−863−8259
Email: bmarcus@gladlaw.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Rovenger**
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont Street
Suite 950
Boston, MA 02108
617−426−1350
Email: jrovenger@gladlaw.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah K. Austin**
GLBTQ LEGAL ADVOCATES &

DEFENDERS
18 Tremont, Suite 950
Boston, MA 02108
617−426−1350
Email: saustin@gladlaw.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Movant**

**AMERICAN CIVIL LIBERTIES UNION** represented by **Leah Watson**
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street
18th Floor
New York, NY 10004
212−519−7855
Email: lwatson@aclu.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Adria Jasmine Bonillas**
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, NW
Suite 900
Washington, DC 20005
202−662−8317
Email: abonillas@lawyerscommittee.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Freya Jamison**
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, NW
Suite 900
Washington, DC 20005
202−662−8377
Email: fjamison@lawyerscommittee.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael Joseph Pillera**
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, NW
Suite 900
Washington, DC 20005
202−662−8338
Email: mpillera@lawyerscommittee.org
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Sumayya Saleh**
RIGHTS BEHIND BARS
1800 M St NW
FNT 1 #33821
Washington, DC 20033
813−351−9423
Email: sumayya@rightsbehindbars.org
*TERMINATED: 06/29/2026*
*ATTORNEY TO BE NOTICED*

**Amicus**

**GEORGE WASHINGTON LAW SCHOOL** represented by **Alan Butler Morrison**
GEORGE WASHINGTON UNIVERSITY LAW SCHOOL
DC
2000 H Street NW
Washington, DC 20052
202−994−7120
Email: abmorrison@law.gwu.edu
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**GLBTQ LEGAL ADVOCATES & DEFENDERS** represented by **Benjamin Pietro Marcus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Rovenger**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah K. Austin**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.** represented by **Benjamin Pietro Marcus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Rovenger**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah K. Austin**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**OUTFRONT MINNESOTA** represented by **Benjamin Pietro Marcus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Rovenger**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah K. Austin**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**EQUALITY CALIFORNIA** represented by **Benjamin Pietro Marcus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Rovenger**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah K. Austin**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**PFLAG GREATER BOSTON** represented by **Benjamin Pietro Marcus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Rovenger**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah K. Austin**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Amicus**

**SERVICES AND ADVOCACY FOR GLBTQ+ ELDERS (SAGE)** represented by

**Benjamin Pietro Marcus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Rovenger**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah K. Austin**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**NATIONAL WOMEN'S LAW CENTER** represented by

**Benjamin Pietro Marcus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Rovenger**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW** represented by

**Leah Watson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael Joseph Pillera**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Adria Jasmine Bonillas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Chavis Travon Jones**
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
605 South Columbus Street

Alexandria, VA 22314
864−529−5812
Email: cjones@lawyerscommittee.org
*ATTORNEY TO BE NOTICED*

**Freya Jamison**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sumayya Saleh**
(See above for address)
*TERMINATED: 06/29/2026*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/04/2025 | 1 | COMPLAINT against All Defendants ( Filing fee $ 405 receipt number ADCDC−12061678) filed by ROBERT F. KENNEDY CENTER FOR JUSTICE AND HUMAN RIGHTS, THE DOOR − A CENTER FOR ALTERNATIVES, INC.. (Attachments: # 1 Civil Cover Sheet, # 2 Summons U.S. Department of Education, # 3 Summons Secretary of Education, # 4 Summons U.S. Attorney's Office, # 5 Attorney General)(Early, Cormac) (Entered: 11/04/2025) |
| 11/04/2025 | 2 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by ROBERT F. KENNEDY CENTER FOR JUSTICE AND HUMAN RIGHTS (Early, Cormac) (Entered: 11/04/2025) |
| 11/04/2025 | 3 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by AMERICAN IMMIGRATION COUNCIL (Early, Cormac) (Entered: 11/04/2025) |
| 11/04/2025 | 4 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by THE DOOR − A CENTER FOR ALTERNATIVES, INC. (Early, Cormac) (Entered: 11/04/2025) |
| 11/04/2025 | 5 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by LEAGUE OF UNITED LATIN AMERICAN CITIZENS INSTITUTE, INC. (Early, Cormac) (Entered: 11/04/2025) |
| 11/04/2025 | 6 | NOTICE of Appearance by Chris Bryant on behalf of AMERICAN IMMIGRATION COUNCIL, LEAGUE OF UNITED LATIN AMERICAN CITIZENS INSTITUTE, INC., ROBERT F. KENNEDY CENTER FOR JUSTICE AND HUMAN RIGHTS, THE DOOR − A CENTER FOR ALTERNATIVES, INC. (Bryant, Chris) (Entered: 11/04/2025) |
| 11/05/2025 | 7 | NOTICE of Appearance by Daniel A. Zibel on behalf of All Plaintiffs (Zibel, Daniel) (Entered: 11/05/2025) |
| 11/05/2025 | 8 | NOTICE of Appearance by Eric Rothschild on behalf of AMERICAN IMMIGRATION COUNCIL, LEAGUE OF UNITED LATIN AMERICAN CITIZENS INSTITUTE, INC., ROBERT F. KENNEDY CENTER FOR JUSTICE AND HUMAN RIGHTS, THE DOOR − A CENTER FOR ALTERNATIVES, INC. (Rothschild, Eric) (Entered: 11/05/2025) |

| | | |
|---|---|---|
| 11/05/2025 | | Case Assigned to Judge Amir H. Ali. (zjm) (Entered: 11/05/2025) |
| 11/05/2025 | 9 | SUMMONS (4) Issued Electronically as to LINDA MCMAHON, UNITED STATES DEPARTMENT OF EDUCATION, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(zjm) Modified on 11/5/2025 to correct docket text (zjm). (Entered: 11/05/2025) |
| 11/06/2025 | 10 | NOTICE of Appearance by Adam R. Pulver on behalf of AMERICAN IMMIGRATION COUNCIL, LEAGUE OF UNITED LATIN AMERICAN CITIZENS INSTITUTE, INC., ROBERT F. KENNEDY CENTER FOR JUSTICE AND HUMAN RIGHTS, THE DOOR − A CENTER FOR ALTERNATIVES, INC. (Pulver, Adam) (Entered: 11/06/2025) |
| 11/18/2025 | 11 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 11/5/2025. Answer due for ALL FEDERAL DEFENDANTS by 1/4/2026. (Early, Cormac) (Entered: 11/18/2025) |
| 11/24/2025 | 12 | NOTICE of Appearance by Heidy L Gonzalez on behalf of All Defendants (Gonzalez, Heidy) (Entered: 11/24/2025) |
| 11/24/2025 | 13 | STIPULATION *Regarding Summary Judgment Briefing Schedule* by LINDA MCMAHON, UNITED STATES DEPARTMENT OF EDUCATION. (Attachments: # 1 Text of Proposed Order)(Gonzalez, Heidy) (Entered: 11/24/2025) |
| 11/26/2025 | | MINUTE ORDER. The court construes the parties' 13 stipulation regarding summary judgment briefing schedule as a motion for briefing schedule. The motion is granted. Defendants shall produce the administrative record to Plaintiffs by January 12, 2026. Plaintiffs shall file any motion for summary judgment by February 9, 2026. Defendants shall file any response to Plaintiffs' motion for summary judgment, consolidated with any cross−motion for summary judgment or dismissal, by March 9, 2026. Plaintiffs shall file any reply in support of summary judgment, consolidated with any response to Defendants' cross−motion, by March 30, 2026. Defendants shall file any reply in support of their cross−motion by April 20, 2026. The parties shall file a joint appendix by May 4, 2026. The parties shall file a joint status report within seven days of the court's resolution of summary judgment proposing next steps, including, as appropriate, a timeline for Defendants to file an answer. Signed by Judge Amir H. Ali on 11/26/2025. (lcaha2) Modified on 11/26/2025. (zalh) (Entered: 11/26/2025) |
| 11/26/2025 | | Set/Reset Deadlines: Defendants' Cross Motion for Summary Judgment due by 3/9/2026. Plaintiffs' Response to Cross Motion for Summary Judgment due by 3/30/2026. (zalh) (Entered: 11/26/2025) |
| 12/01/2025 | 14 | STANDING ORDER. The parties are ordered to comply with the directives set forth in the attached standing order. See document for details. Signed by Judge Amir H. Ali on 12/1/2025. (lcaha2) (Entered: 12/01/2025) |
| 12/16/2025 | 15 | NOTICE of Appearance by Aaron S. Ament on behalf of AMERICAN IMMIGRATION COUNCIL, LEAGUE OF UNITED LATIN AMERICAN CITIZENS INSTITUTE, INC., ROBERT F. KENNEDY CENTER FOR JUSTICE AND HUMAN RIGHTS, THE DOOR − A CENTER FOR ALTERNATIVES, INC. (Ament, Aaron) (Entered: 12/16/2025) |
| 01/12/2026 | 16 | ADMINISTRATIVE RECORD by LINDA MCMAHON, UNITED STATES DEPARTMENT OF EDUCATION. (Attachments: # 1 Exhibit A)(Gonzalez, Heidy) |

| | | |
|---|---|---|
| | | (Entered: 01/12/2026) |
| 02/09/2026 | 17 | MOTION for Summary Judgment by AMERICAN IMMIGRATION COUNCIL, LEAGUE OF UNITED LATIN AMERICAN CITIZENS INSTITUTE, INC., ROBERT F. KENNEDY CENTER FOR JUSTICE AND HUMAN RIGHTS, THE DOOR − A CENTER FOR ALTERNATIVES, INC.. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order, # 3 Affidavit Declaration of Babette Perez, # 4 Affidavit Declaration of Jorge Loweree, # 5 Affidavit Declaration of Juan Proao, # 6 Affidavit Declaration of Kelsey Louie)(Early, Cormac) (Entered: 02/09/2026) |
| 02/10/2026 | 18 | ERRATA *corrected table of contents* by AMERICAN IMMIGRATION COUNCIL, LEAGUE OF UNITED LATIN AMERICAN CITIZENS INSTITUTE, INC., ROBERT F. KENNEDY CENTER FOR JUSTICE AND HUMAN RIGHTS, THE DOOR − A CENTER FOR ALTERNATIVES, INC. re 17 Motion for Summary Judgment,. (Early, Cormac) (Entered: 02/10/2026) |
| 02/19/2026 | 19 | MOTION for Leave to File Amicus Brief by George Washington Law School. (Attachments: # 1 Memorandum in Support)(Morrison, Alan) (Entered: 02/19/2026) |
| 02/24/2026 | 20 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Nathan A. Maxwell, Filing fee $ 100, receipt number ADCDC−12262995. Fee Status: Fee Paid. by GLBTQ Legal Advocates & Defenders, LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC., OutFront Minnesota, Equality California, PFLAG Greater Boston, Services and Advocacy for GLBTQ+ Elders (SAGE), NATIONAL WOMENS LAW CENTER, Our Family Coalition. (Attachments: # 1 Affidavit Declaration of Nathan A. Maxwell, # 2 Exhibit Certificate of Good Standing)(Marcus, Benjamin) (Entered: 02/24/2026) |
| 02/24/2026 | 21 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Sarah Austin, Filing fee $ 100, receipt number ADCDC−12263045. Fee Status: Fee Paid. by Equality California, GLBTQ Legal Advocates & Defenders, LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC., NATIONAL WOMENS LAW CENTER, Our Family Coalition, OutFront Minnesota, PFLAG Greater Boston, Services and Advocacy for GLBTQ+ Elders (SAGE). (Attachments: # 1 Affidavit Declaration of Sarah Austin, # 2 Exhibit Certificate of Good Standing)(Marcus, Benjamin) (Entered: 02/24/2026) |
| 02/24/2026 | 22 | Consent MOTION for Leave to File Amicus Brief by GLBTQ LEGAL ADVOCATES & DEFENDERS, LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC., OUTFRONT MINNESOTA, EQUALITY CALIFORNIA, PFLAG GREATER BOSTON, SERVICES AND ADVOCACY FOR GLBTQ+ ELDERS (SAGE), NATIONAL WOMEN'S LAW CENTER, OUR FAMILY COALITION. (Attachments: # 1 Exhibit Proposed Brief, # 2 Text of Proposed Order)(Marcus, Benjamin) (Entered: 02/24/2026) |
| 02/24/2026 | 23 | Unopposed MOTION for Leave to File Amicus Brief *In Support of Plaintiffs' Motion for Summary Judgment* by LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW. (Attachments: # 1 [Proposed] Brief of Amicus Curiae the Lawyers' Committee for Civil Rights Under Law and American Civil Liberties Union, # 2 [Proposed] Order Granting Leave to File Brief of Amici Curiae)(Jones, Chavis) (Entered: 02/24/2026) |
| 02/24/2026 | 24 | NOTICE of Appearance by Chavis Travon Jones on behalf of LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW (Jones, Chavis) (Entered: 02/24/2026) |

| | | |
|---|---|---|
| 02/24/2026 | 25 | NOTICE of Appearance by Sumayya Saleh on behalf of LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW (Saleh, Sumayya) (Entered: 02/24/2026) |
| 02/24/2026 | 26 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Michael J. Pillera, Filing fee $ 100, receipt number ADCDC–12263241. Fee Status: Fee Paid. by LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Proposed Order)(Saleh, Sumayya) (Entered: 02/24/2026) |
| 02/24/2026 | 27 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Adria Bonillas, Filing fee $ 100, receipt number ADCDC–12263246. Fee Status: Fee Paid. by LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Proposed Order)(Saleh, Sumayya) (Entered: 02/24/2026) |
| 02/25/2026 | 28 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Freya Jamison, Filing fee $ 100, receipt number ADCDC–12264529. Fee Status: Fee Paid. by LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Proposed Order)(Saleh, Sumayya) (Entered: 02/25/2026) |
| 02/27/2026 | 29 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Joshua D. Rovenger, Filing fee $ 100, receipt number ADCDC–12269412. Fee Status: Fee Paid. by EQUALITY CALIFORNIA, GLBTQ LEGAL ADVOCATES & DEFENDERS, LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC., NATIONAL WOMEN'S LAW CENTER, OUR FAMILY COALITION, OUTFRONT MINNESOTA, PFLAG GREATER BOSTON. (Attachments: # 1 Declaration of Joshua D. Rovenger, # 2 Certificate of Good Standing)(Marcus, Benjamin) (Entered: 02/27/2026) |
| 03/04/2026 | 30 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Leah Watson, Filing fee $ 100, receipt number ADCDC–12278837. Fee Status: Fee Paid. by AMERICAN CIVIL LIBERTIES UNION. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Proposed Order)(Saleh, Sumayya) (Entered: 03/04/2026) |
| 03/09/2026 | 31 | RESPONSE re 17 MOTION for Summary Judgment filed by LINDA MCMAHON, UNITED STATES DEPARTMENT OF EDUCATION. (Attachments: # 1 Text of Proposed Order)(Gonzalez, Heidy) (Entered: 03/09/2026) |
| 03/09/2026 | 32 | Cross MOTION to Dismiss *or in the Alternative for Summary Judgment (see also ECF No. 31 per ECF requirements)* by LINDA MCMAHON, UNITED STATES DEPARTMENT OF EDUCATION. (Attachments: # 1 Text of Proposed Order)(Gonzalez, Heidy) (Entered: 03/09/2026) |
| 03/13/2026 | | MINUTE ORDER granting 26 motion for leave to appear pro hac vice. Attorney Michael J. Pillera is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amir H. Ali on 3/13/2026. (lcaha2) (Entered: 03/13/2026) |
| 03/13/2026 | | MINUTE ORDER granting 20 motion for leave to appear pro hac vice. Attorney Nathan A. Maxwell is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amir H. Ali on 3/13/2026. (lcaha2) (Entered: 03/13/2026) |

| | | |
|---|---|---|
| 03/13/2026 | | MINUTE ORDER granting 27 motion for leave to appear pro hac vice. Attorney Adria Bonillas is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amir H. Ali on 3/13/2026. (lcaha2) (Entered: 03/13/2026) |
| 03/13/2026 | | MINUTE ORDER granting 21 motion for leave to appear pro hac vice. Attorney Sarah K. Austin is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amir H. Ali on 3/13/2026. (lcaha2) (Entered: 03/13/2026) |
| 03/13/2026 | | MINUTE ORDER granting 29 motion for leave to appear pro hac vice. Attorney Joshua D. Rovenger is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amir H. Ali on 3/13/2026. (lcaha2) (Entered: 03/13/2026) |
| 03/13/2026 | | MINUTE ORDER granting 30 motion for leave to appear pro hac vice. Attorney Leah Watson is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amir H. Ali on 3/13/2026. (lcaha2) (Entered: 03/13/2026) |
| 03/13/2026 | 33 | NOTICE of Appearance by Sarah K. Austin on behalf of EQUALITY CALIFORNIA, GLBTQ LEGAL ADVOCATES & DEFENDERS, LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC., NATIONAL WOMENS LAW CENTER, OUR FAMILY COALITION, OUTFRONT MINNESOTA, PFLAG GREATER BOSTON, SERVICES AND ADVOCACY FOR GLBTQ+ ELDERS (SAGE) (Austin, Sarah) (Main Document 33 replaced on 3/16/2026) (mg). (Entered: 03/13/2026) |
| 03/13/2026 | 34 | NOTICE of Appearance by Joshua Rovenger on behalf of EQUALITY CALIFORNIA, GLBTQ LEGAL ADVOCATES & DEFENDERS, LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC., NATIONAL WOMEN'S LAW CENTER, OUR FAMILY COALITION, OUTFRONT MINNESOTA, PFLAG GREATER BOSTON, SERVICES AND ADVOCACY FOR GLBTQ+ ELDERS (SAGE) (Rovenger, Joshua) (Main Document 34 replaced on 3/16/2026) (mg). (Entered: 03/13/2026) |
| 03/13/2026 | 35 | NOTICE of Appearance by Nathan Maxwell on behalf of Equality California, GLBTQ Legal Advocates & Defenders, LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC., NATIONAL WOMENS LAW CENTER, Our Family Coalition, OutFront Minnesota, PFLAG Greater Boston, Services and Advocacy for GLBTQ+ Elders (SAGE) (Maxwell, Nathan) (Entered: 03/13/2026) |
| 03/17/2026 | | MINUTE ORDER. The court is in receipt of the 28 motion for leave to appear pro hac vice for attorney Freya Jamison. Under the comment to Local Civil Rule 83.2(c)(2), "as a general matter, attorneys who engage in the practice of law from an office located in the District of Columbia and who file papers in this Court should be a member of the Bar of this Court and the District of Columbia Bar." The motion represents that Jamison practices from an office located in the District of Columbia and is admitted to the District of Columbia Bar. ECF No. 28 at 2. But the declaration indicates that Jamison is not a member of the District of Columbia Bar. ECF No. 28−1 at 1. Accordingly, the 28 motion is denied without prejudice. The court will grant pro hac vice admission if Jamison clarifies that she is a member of the District of Columbia |

| | | |
|---|---|---|
| | | bar, or submits an application for admission to that bar. Signed by Judge Amir H. Ali on 3/17/2026. (lcaha2) Modified on 3/23/2026. (zalh) (Entered: 03/17/2026) |
| 03/18/2026 | 36 | NOTICE of Appearance by Michael Joseph Pillera on behalf of AMERICAN CIVIL LIBERTIES UNION, LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW (Pillera, Michael) (Entered: 03/18/2026) |
| 03/18/2026 | 37 | NOTICE of Appearance by Adria Jasmine Bonillas on behalf of AMERICAN CIVIL LIBERTIES UNION, LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW (Bonillas, Adria) (Entered: 03/18/2026) |
| 03/19/2026 | 38 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Freya Jamison, Filing fee $ 100, receipt number ADCDC−12309436. Fee Status: Fee Paid. by AMERICAN CIVIL LIBERTIES UNION, LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Proposed Order)(Saleh, Sumayya) (Entered: 03/19/2026) |
| 03/23/2026 | | MINUTE ORDER granting 38 motion for leave to appear pro hac vice. Attorney Freya Jamison is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amir H. Ali on 3/23/2026. (lcaha2) (Entered: 03/23/2026) |
| 03/25/2026 | 39 | NOTICE of Appearance by Freya Jamison on behalf of AMERICAN CIVIL LIBERTIES UNION, LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW (Jamison, Freya) (Entered: 03/25/2026) |
| 03/30/2026 | 40 | Memorandum in opposition to re 32 Cross MOTION to Dismiss *or in the Alternative for Summary Judgment (see also ECF No. 31 per ECF requirements)* filed by ROBERT F. KENNEDY CENTER FOR JUSTICE AND HUMAN RIGHTS. (Early, Cormac) (Entered: 03/30/2026) |
| 03/30/2026 | 41 | REPLY to opposition to motion re 17 Motion for Summary Judgment, filed by ROBERT F. KENNEDY CENTER FOR JUSTICE AND HUMAN RIGHTS. (Early, Cormac) (Entered: 03/30/2026) |
| 04/07/2026 | 42 | NOTICE of Appearance by Leah Watson on behalf of AMERICAN CIVIL LIBERTIES UNION, LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW (Watson, Leah) (Entered: 04/07/2026) |
| 04/20/2026 | 43 | REPLY to opposition to motion re 32 Motion to Dismiss *or in the alternative, Summary Judgment* filed by LINDA MCMAHON, UNITED STATES DEPARTMENT OF EDUCATION. (Gonzalez, Heidy) (Entered: 04/20/2026) |
| 05/04/2026 | 44 | JOINT APPENDIX *of Administrative Record* by ROBERT F. KENNEDY CENTER FOR JUSTICE AND HUMAN RIGHTS re 17 Motion for Summary Judgment, (Attachments: # 1 Appendix Volume I, # 2 Appendix Volume II, # 3 Appendix Volume III, # 4 Appendix Volume IV, # 5 Appendix Volume V)(Early, Cormac) Modified event on 5/11/2026 (mg). (Entered: 05/04/2026) |
| 06/11/2026 | 45 | MOTION to Withdraw as Attorney by AMERICAN CIVIL LIBERTIES UNION, LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW. (Saleh, Sumayya) (Entered: 06/11/2026) |
| 06/23/2026 | 46 | NOTICE OF SUPPLEMENTAL AUTHORITY by ROBERT F. KENNEDY CENTER FOR JUSTICE AND HUMAN RIGHTS (Attachments: # 1 Exhibit Federal Register |

| | | |
|---|---|---|
| | | notice, # 2 Exhibit Redline of proposed revisions)(Early, Cormac) (Entered: 06/23/2026) |
| 06/29/2026 | | MINUTE ORDER. The 45 motion to withdraw the appearance of attorney Sumayya Saleh is granted. Signed by Judge Amir H. Ali on 6/29/2026. (lcaha2) (Entered: 06/29/2026) |
| 06/30/2026 | | MINUTE ORDER. George Washington Law School's 19 motion for leave to file amicus brief, GLBTQ Legal Advocates & Defenders et al.'s 22 consent motion for leave to file amicus brief, and Lawyers' Committee for Civil Rights Under Law's 23 unopposed motion for leave to file amicus brief in support of Plaintiffs' motion for summary judgment are granted. Signed by Judge Amir H. Ali on 06/30/2026. (lcaha3) Modified on 7/2/2026. (zalh) (Entered: 06/30/2026) |
| 06/30/2026 | 47 | MEMORANDUM OPINION. Plaintiffs' 17 motion for summary judgment is granted. Defendants' 32 cross−motion to dismiss, or in the alternative for summary judgment, is denied. See document for details. Signed by Judge Amir H. Ali on 06/30/2026. (lcaha3) (Entered: 06/30/2026) |
| 06/30/2026 | 48 | ORDER. For the reasons stated in the accompanying memorandum opinion, Plaintiffs' 17 motion for summary judgment is granted. Defendants' 32 cross−motion to dismiss, or in the alternative for summary judgment, is denied. The final rule, William D. Ford Federal Direct Loan (Direct Loan) Program, 90 Fed. Reg. 48966 (Oct. 31, 2025), is vacated. The Clerk of Court is directed to close the case. Signed by Judge Amir H. Ali on 06/30/2026. (lcaha3) (Entered: 06/30/2026) |
| 06/30/2026 | 49 | AMICUS BRIEF by GEORGE WASHINGTON LAW SCHOOL. (mg) (Entered: 07/06/2026) |
| 06/30/2026 | 50 | AMICUS BRIEF by EQUALITY CALIFORNIA, GLBTQ LEGAL ADVOCATES & DEFENDERS, LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC., NATIONAL WOMEN'S LAW CENTER, OUR FAMILY COALITION, OUTFRONT MINNESOTA, PFLAG GREATER BOSTON, SERVICES AND ADVOCACY FOR GLBTQ+ ELDERS (SAGE). (mg) (Entered: 07/06/2026) |
| 06/30/2026 | 51 | AMICUS BRIEF by LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW. (mg) (Entered: 07/06/2026) |
| 08/27/2026 | 52 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 48 Order on Motion to Dismiss,, Order on Motion for Summary Judgment, 47 Memorandum & Opinion, by UNITED STATES DEPARTMENT OF EDUCATION, LINDA MCMAHON. Fee Status: No Fee Paid. (Gonzalez, Heidy) (Entered: 08/27/2026) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROBERT F. KENNEDY CENTER FOR JUSTICE AND HUMAN RIGHTS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>LINDA MCMAHON, in her official capacity as SECRETARY OF EDUCATION, *et al.*,<br><br>Defendants. | No. 25-cv-03860-AHA |

**DEFENDANTS' NOTICE OF APPEAL**

All Defendants provide notice that they hereby appeal to the United States Court of Appeals for the District of Columbia Circuit the Court's June 30, 2026 Memorandum Opinion (ECF No. 47) and Order (ECF No. 48), which granted Plaintiffs' February 9, 2026 Motion for Summary Judgment (ECF No. 17) and denied Defendants' March 9, 2026 Cross-Motion to Dismiss, or in the Alternative for Summary Judgment (ECF Nos. 31, 32).

Dated: August 27, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE BENNETT
Assistant Branch Director
Federal Programs Branch

*/s/ Heidy L. Gonzalez*
HEIDY L. GONZALEZ
(FL Bar No. 1025003)
*Trial Attorney*

U.S. Department of Justice,
Civil Division, Federal Programs
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 598-7409
Email: heidy.gonzalez@usdoj.gov

*Attorney for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ROBERT F. KENNEDY CENTER FOR JUSTICE AND HUMAN RIGHTS, *et al.*,

*Plaintiffs*,

v.

LINDA MCMAHON, *et al.*,

*Defendants*.

Civil Action No. 25-03860 (AHA)

**Memorandum Opinion**

The plaintiffs are section 501(c)(3) organizations that employ people who participate in the federal public service loan forgiveness program. Under that statutory program, the Secretary of Education is required to forgive the remaining balance of federal student loans for borrowers who have made ten years of payments on their loans while working in public service jobs. The plaintiffs challenge the Secretary's recent final rule that allows the Secretary to disqualify certain employers based on the Secretary's determination that the employer engages in activities such that they have a "substantial illegal purpose." The plaintiffs move for summary judgment, arguing the Secretary's rule is contrary to law and exceeds her statutory authority, violating the Administrative Procedure Act. The court agrees and vacates the rule.

## I. Background

### A. Statutory And Regulatory Background

In 2007, Congress passed the College Cost Reduction and Access Act, which amended the Higher Education Act and created the public service loan forgiveness ("PSLF") program. College Cost Reduction and Access Act, Pub. L. No. 110-84, § 401, 121 Stat. 784, 800–01 (2007). Under

the program, "[t]he Secretary shall cancel the balance of interest and principal due" on any eligible federal direct student loan that is not in default if the borrower (1) has made 120 monthly payments on the loan; (2) "is employed in a public service job at the time of such forgiveness"; and (3) "has been employed in a public service job during the period in which the borrower makes each of the 120 payments." 20 U.S.C. § 1087e(m)(1). The act defines "public service job" to mean a full-time job in a list of public service sectors (including emergency management, government, military service, public safety, law enforcement, public health, public education, certain types of social work, public interest law services, early childhood education, public services for individuals with disabilities and the elderly, public library sciences, and school-based library sciences and other school-based services), or a full-time job "at an organization that is described in section 501(c)(3) of Title 26 and exempt from taxation under section 501(a) of such title." *Id.* § 1087e(m)(3)(B)(i). Current implementing regulations reflect that definition, by recognizing a borrower's eligibility for loan forgiveness if they are employed at, and made payments while working full time at, a "qualifying employer," which is further defined by reference to the statutory public service sectors and—tracking the act's instruction—"[a]n organization under section 501(c)(3) of the Internal Revenue Code of 1986 that is exempt from taxation under section 501(a) of the Internal Revenue Code." 34 C.F.R. § 685.219(b).

On March 7, 2025, the President issued an executive order saying the PSLF program "has misdirected tax dollars into activist organizations that not only fail to serve the public interest, but actually harm our national security and American values" and directing the Secretary of Education to propose revisions to the program's implementing regulations to "ensure the definition of 'public service' excludes organizations that engage in activities that have a substantial illegal purpose." Exec. Order No. 14235, 90 Fed Reg. 11885, 11885 (Mar. 12, 2025). The order identifies five

activities as having a substantial illegal purpose: "aiding or abetting violations of 8 U.S.C. 1325 or other Federal immigration laws"; "supporting terrorism"; "child abuse, including the chemical and surgical castration or mutilation of children or the trafficking of children to so-called transgender sanctuary States"; "engaging in a pattern of aiding and abetting illegal discrimination"; and "engaging in a pattern of violating State tort laws, including laws against trespassing, disorderly conduct, public nuisance, vandalism, and obstruction of highways." *Id.*

About five months later, the Secretary issued a notice of proposed rulemaking to amend the PSLF program's implementing regulations. *See* William D. Ford Federal Direct Loan (Direct Loan) Program, 90 Fed. Reg. 40154 (Aug. 18, 2025). After public comment, the Secretary issued a final rule, to take effect on July 1, 2026. *See* William D. Ford Federal Direct Loan (Direct Loan) Program, 90 Fed. Reg. 48966 (Oct. 31, 2025). The rule amends the implementing regulations to eliminate loan forgiveness for borrowers who have full time jobs in the relevant public service sectors or at section 501(c)(3) organizations if, on the Secretary's determination, their employer "has a substantial illegal purpose." *Id.* at 49002. The rule does this by changing the definition of a "qualifying employer" to exclude "organizations that engage in activities such that they have a substantial illegal purpose." *Id.* at 49001. "Substantial illegal purpose" is defined to mean "aiding or abetting violations of 8 U.S.C. 1325 or other Federal immigration laws"; "[s]upporting terrorism"; "[e]ngaging in the chemical and surgical castration or mutilation of children in violation of Federal or State law"; "[e]ngaging in the trafficking of children to another State for purposes of emancipation from their lawful parents in violation of Federal or State law"; "[e]ngaging in a pattern of aiding and abetting illegal discrimination"; and "[e]ngaging in a pattern of violating State laws," including laws against trespassing, disorderly conduct, public nuisance, vandalism, or obstruction of highways. *Id.* at 49001. If the Secretary makes a determination that

an organization has a "substantial illegal purpose," then a borrower with a full-time job at that organization would no longer receive credit for payments made while working for the organization, even if the job was in one of the public service sectors listed in the act or at a section 501(c)(3) organization. *Id.*

The final rule requires any organization that employs people who participate in the PSLF program to certify that it "did not participate in activities that have a substantial illegal purpose." *Id.* at 49002. If an employer does not make the certification, the Secretary "will determine" it has a "substantial illegal purpose." *Id.*[1] The Secretary may also determine that an employer has a "substantial illegal purpose" regardless of the employer's certification by "considering the materiality of any illegal activities or actions as described in [the rule]" and giving the employer "notice and opportunity to respond." *Id.* Such determinations are to be made by the Secretary "by a preponderance of the evidence." *Id.* An employer that the Secretary determines to have a "substantial illegal purpose" can regain qualification only after ten years or after the Secretary approves an employer's "corrective action plan." *Id.*

---

[1] Under existing regulations, borrowers update the Secretary about their employment status by submitting a form, which includes a section requiring employers to certify that certain information about the borrower's employment is correct. *See* 34 C.F.R. § 685.219(e); *see also* ECF No. 17-3 ¶ 9; ECF No. 17-4 ¶ 14. The final rule's requirement that employers certify that they did not participate in activities that have a "substantial illegal purpose" will be reflected on the form. *See* 90 Fed. Reg. at 48999 ("The Department will amend the PSLF form to include the ability for a qualifying employer to certify that it has not engaged in activity that has a substantial illegal purpose."); *see also* Agency Information Collection Activities; Public Service Loan Forgiveness (PSLF) & Temporary Expanded PSLF (TEPSLF) Certification and Application, 91 Fed. Reg. 36812, 36812 (June 18, 2026) (requesting emergency approval of a revision to the form that would "revis[e] the certification language to include an attestation, under penalty of perjury, that the employer has not engaged in any activity that has a substantial illegal purpose on or after July 1, 2026").

### B. Factual Background

The plaintiffs are four section 501(c)(3) organizations that regularly employ people who rely on that employment to qualify for PSLF, three of which currently employ people pursuing loan forgiveness under the PSLF program. ECF No. 17-3 ¶ 15; ECF No. 17-4 ¶ 16; ECF No. 17-5 ¶ 7; ECF No. 17-6 ¶¶ 9–11. Plaintiff Robert F. Kennedy Center for Justice and Human Rights engages in human rights and immigration advocacy, including advocacy on behalf of undocumented immigrants. ECF No. 17-3 ¶¶ 2–3, 11. Plaintiff American Immigration Council works to provide fair process for immigrants through litigation, research, legislative and administrative advocacy, and communications, including directly representing noncitizens navigating immigration detention and removal and providing training on those topics. ECF No. 17-4 ¶¶ 2, 4, 6. Plaintiff League of United Latin American Citizens Institute, Inc., serves Hispanic Americans through community-based programs on economic conditions, education, political influence, housing, health, civil rights, and the citizenship application process. ECF No. 17-5 ¶¶ 2–5. Plaintiff The Door – A Center of Alternatives, Inc., offers free services like counseling, health and nutrition assistance, legal services, housing support, arts, education, and career guidance to youth in New York City, including services to undocumented young people and medically appropriate gender-affirming care. ECF No. 17-6 ¶¶ 3–6.

The plaintiffs move for summary judgment on their claims that the final rule is contrary to law, in excess of the Secretary's statutory authority, and arbitrary and capricious in violation of the Administrative Procedure Act ("APA"); impermissibly vague in violation of the Due Process Clause; and suppresses protected speech in violation of the First Amendment. ECF No. 17. The government moves to dismiss the plaintiffs' claims, or in the alternative, for summary judgment. ECF No. 32.

**II. Discussion**

The APA authorizes judicial review of final agency action and requires a court to "hold unlawful and set aside agency action" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)–(C); *see id.* §§ 702, 704. If agency action is found to be unlawful, the "normal remedy" is to vacate the rule. *Ky. Mun. Energy Agency v. FERC*, 45 F.4th 162, 179 (D.C. Cir. 2022) (citation omitted). Here, it is undisputed that the Secretary's final rule is final agency action. The plaintiffs argue that action violates the APA because it contradicts the plain text of the Higher Education Act and exceeds the Secretary's statutory authority, it has no rational connection to the factual record and is illogical on its own terms, and it violates the Due Process Clause and the First Amendment. ECF No. 17-1 at 17–36.

The court first considers whether the plaintiffs have standing to bring their claims and whether their claims are ripe for judicial review before turning to the merits.

**A. The Plaintiffs' Claims Are Justiciable**

The government argues the plaintiffs' claims are not justiciable because they lack standing to bring their claims and their claims are not ripe for review. ECF No. 32 at 7–11. Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (cleaned up). "To establish Article III standing, the plaintiff must have 'suffered an injury in fact' that 'is fairly traceable to the challenged action of the defendant' and it must be 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Banner Health v. Price*, 867 F.3d 1323, 1333–34 (D.C. Cir. 2017) (quoting *Friends of*

*the Earth v. Laidlaw Env't Servs.*, 528 U.S. 167, 180–81 (2000)). An injury must be "concrete and particularized" and "actual or imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Because this case is at the summary judgment stage, the plaintiffs "must set forth by affidavit or other evidence specific facts" to establish standing. *Lujan*, 504 U.S. at 561 (cleaned up).

When "the plaintiff is himself an object of" the challenged agency action, "there is ordinarily little question that the action . . . caused him injury." *Id.* at 561–62; *see also State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 53 (D.C. Cir. 2015) ("There is ordinarily little question that a regulated individual or entity has standing to challenge an allegedly illegal statute or rule under which it is regulated." (cleaned up)). Here, the plaintiffs, section 501(c)(3) organizations that employ people who participate in the PSLF program, are quite clearly objects of the challenged rule. The rule itself says its purpose is to "exclude organizations engaged in specific enumerated activities" from being qualifying employers, and it sets forth various terms under which the Secretary will determine which organizations remain qualified and which do not. 90 Fed. Reg. at 48966; *see id.* at 49001–02.

In addition to the fact that the rule, on its face, regulates the plaintiffs' conduct, it imposes affirmative obligations and compliance costs. The rule requires the plaintiffs, as organizations that employ people participating in the PSLF program, to undertake regular, affirmative certifications to the government about their activities, on threat of losing their qualification as a PSLF employer. *Id.* at 49001–02. As the Supreme Court has put it: "Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024). Here, the rule unquestionably requires the plaintiffs to take "some action" they would not otherwise take.

*Id.*; *see also Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 167 F.4th 86, 94, 98 (4th Cir. 2026) (holding plaintiffs had standing to challenge provision requiring federal contractors and grantees to certify they do "not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws" because they "'are forced to do something they otherwise would not need to do'—affirmatively certify that their DEI programming complies with federal antidiscrimination laws" (quoting *Nat'l Urb. League v. Trump*, 783 F. Supp. 3d 61, 85 (D.D.C. 2025)).

The plaintiffs have also proffered unrebutted evidence that the rule, whose provisions involve multifaceted definitions of what the Secretary will consider to determine whether an organization "has a substantial illegal purpose," imposes concrete compliance costs on them. 90 Fed. Reg. at 49001–02. That evidence shows that, given the plaintiffs' regular employment of people participating in the PSLF program, the rule requires them to conduct an assessment of their programs and operations, develop internal communications and guidance, and support individual employees with PSLF certifications, which may include not only using their internal resources but also engaging outside counsel. *See* ECF No. 17-3 ¶¶ 14–15; ECF No. 17-4 ¶¶ 8, 13; ECF No. 17-5 ¶¶ 17–18; ECF No. 17-6 ¶¶ 15–17. According to the unrebutted evidence, the plaintiffs have already started these measures, to be prepared by the rule's effective date. *See* ECF No. 17-4 ¶ 8 (managing director of programs and strategy from one plaintiff attesting that the plaintiff "has already been forced to commence compliance preparations in anticipation of the PSLF rule's potential implementation"); ECF No. 17-5 ¶ 18 (chief executive officer of another plaintiff attesting that the plaintiff's internal review of programs to prepare for compliance with the rule would "begin no later than April 2026"); ECF No. 17-6 ¶ 17 (chief executive officer of another plaintiff attesting that the plaintiff planned to begin compliance preparations for the new rule "no

later than April 2026”); ECF No. 17-3 ¶ 15 (human resources director of another plaintiff attesting that the plaintiff would begin its compliance preparations for the rule in May or June 2026). And the unrebutted evidence shows these new regulatory obligations will impose concrete financial costs. *See* ECF No. 17-3 ¶ 14 (human resources director from one plaintiff attesting that the plaintiff estimates spending $10,000 to $20,000 in compliance fees, including costs to obtain outside legal counsel to conduct a programmatic review and risk assessment of its operations); ECF No. 17-4 ¶ 13 (managing director of programs and strategy from another plaintiff attesting that the plaintiff “estimates that it will incur costs of between $20,000 and $26,000 for compliance with the new PSLF rule,” which includes legal fees for consultation with outside counsel and staff costs to assess its work streams, develop internal guidance, and support individual employees); ECF No. 17-5 ¶ 18 (chief executive officer of another plaintiff attesting that the plaintiff estimates spending $4,000 to $6,000 to hire outside counsel to help with compliance); ECF No. 17-6 ¶ 16 (chief executive officer of another plaintiff attesting that the plaintiff expects the increased compliance demands from the rule to cost around $70,000 annually). These costs are concrete harms sufficient to support standing. *See, e.g.*, *State Nat’l Bank of Big Spring*, 795 F.3d at 53 (concluding plaintiff had standing where it “alleged that it must now monitor its remittances to stay within the safe harbor, and the monitoring program causes it to incur costs”).

The government argues that these harms are insufficient to support standing. First, it says the plaintiffs cannot show cognizable injury because the rule just requires them to follow the law and certify they are following the law. ECF No. 43 at 3. But that’s a superficial take and overlooks practical reality. Under the rule, the plaintiffs must avoid engaging in activities that might lead the Secretary to determine they have a “substantial illegal purpose,” or else risk disqualification from the PSLF program. 90 Fed. Reg. at 49002. Though the government casts this as a perfunctory task,

the rule itself defines "substantial illegal purpose" with reference to broad notions of "aiding and abetting" or "a pattern of aiding and abetting" certain conduct, some of which is defined by incorporating other statutes, some of which incorporates a variety of categories of "State laws," and some of which is left to terms that appear specific to the rule itself. 90 Fed. Reg. at 49001. The multifaceted nature of the certification and the disqualification penalty would reasonably impose compliance costs, and the plaintiffs have further shown that assessing their compliance with the rule is particularly complex in light of their programs and activities. *See* ECF No. 17-3 ¶¶ 10–14, 16; ECF No. 17-4 ¶¶ 8–14; ECF No. 17-5 ¶¶ 12–17; ECF No. 17-6 ¶¶ 12–15. For example, under the rule, the Robert F. Kennedy Center for Justice and Human Rights, which engages in advocacy for undocumented immigrants, must assess whether it is "aiding or abetting" violations of federal immigration law. ECF No. 17-3 ¶ 11; 90 Fed. Reg. at 49001. And The Door, which provides gender-affirming care to people 18 years old and over, in accordance with New York law, must assess whether it is "[e]ngaging in the chemical and surgical castration or mutilation of children in violation of Federal or State law," given that the final rule defines "children" to include individuals under 19 years of age. ECF No. 17-6 ¶ 14; 90 Fed. Reg. at 49000–01. And all the plaintiffs proffer evidence that they must incur costs to assess compliance with the rule given their uncertainty about whether their diversity, equity, and inclusion programs and programs targeting specific groups might lead the Secretary to determine they have "[e]ngag[ed] in a pattern of aiding and abetting illegal discrimination." ECF No. 17-3 ¶ 13; ECF No. 17-4 ¶ 12; ECF No. 17-5 ¶¶ 13–16; ECF No. 17-6 ¶ 6; 90 Fed. Reg. at 49001. The requirement that the plaintiffs affirmatively certify they have not participated in activities that have a "substantial illegal purpose" clearly imposes a new obligation that goes beyond what the plaintiffs are already doing by following the law. 90 Fed. Reg. at 49002; *see also UnitedHealthcare Ins. Co. v. Price*, 248 F. Supp. 3d 192, 200–01 (D.D.C.

2017) (rejecting the government's argument that rule requiring "proactive compliance activities" merely required regulated organizations to exercise due diligence as they were already obligated to do).

Second, the government asserts that the plaintiffs' compliance costs are not reasonable because they stem from the plaintiffs' own "speculative fears" about how the rule will be applied. *See* ECF No. 32 at 9; ECF No. 43 at 3. But the plaintiffs' costs are not based on speculation about the future; they follow from the rule itself, including the requirement that employers affirmatively certify that they have not participated in activities that have a "substantial illegal purpose," a term defined using broad and novel language. Indeed, in adopting the rule, the Secretary herself "acknowledge[d] that implementing the regulations will generate costs," including "compliance costs for employers." 90 Fed. Reg. at 48993. And she specifically noted the costs "for employers are expected to vary by organization, depending on the organization's size and complexity," and would "primarily result from the costs of legal counsel, restructuring efforts, and changes to the organization's documentation processes"—the very costs the plaintiffs have shown they are presently incurring because of the rule, even in advance of the rule taking effect. *Id.*

The plaintiffs have also shown their injuries are traceable to the final rule and redressable by a favorable decision. The plaintiffs' injuries—including the new certification obligation and the associated costs of compliance—result directly from the final rule, which establishes the certification obligation and the regime under which the Secretary will determine which organizations are disqualified from the PSLF program. The plaintiffs' unrebutted evidence shows that their compliance costs flow from the rule's new requirements. *See* ECF No. 17-3 ¶ 14 (human resources director from one plaintiff attesting that the plaintiff will "no longer be able to certify the [certification form] by only reviewing employment records" and "will need to hire outside

legal counsel to conduct a programmatic review and risk assessment of [its] operations"); ECF No. 17-4 ¶ 14 (managing director of programs and strategy for another plaintiff attesting that the "legal analysis to analyze [the plaintiff's] programs needed to certify that [it] does not engage in any activities with a 'substantial illegal purpose' is beyond the modest administrative burden of the prior rule"); ECF No. 17-5 ¶ 17 (chief executive officer of another plaintiff attesting that the plaintiff faces "increased compliance costs to complete the new [certification form] as compared to the old PSLF rule," which didn't "require a programmatic review or a legal analysis of any kind"); ECF No. 17-6 ¶ 11 (chief executive officer of another plaintiff attesting that "under the new PSLF Rule, the certification process transforms from a primarily administrative certification to one that requires legal analysis and substantive review of [the plaintiff's] programs"). And the plaintiffs' requested relief—vacatur of the rule—would plainly redress their injuries. *See Am.'s Cmty. Bankers v. FDIC*, 200 F.3d 822, 828 (D.C. Cir. 2000) ("Where an agency rule causes the injury, the redressability requirement may be satisfied . . . by vacating the challenged rule."). Accordingly, the plaintiffs have standing to bring their claims.[2]

---

[2] To the extent the government contests whether the plaintiffs' claims are constitutionally ripe, that argument is also unpersuasive. *See* ECF No. 32 at 10–11. Although constitutional ripeness is distinct from standing, here, "the two issues boil down to the same question"—namely, "whether judicial resolution of this dispute is premature." *Sidak v. U.S. Int'l Trade Comm'n*, 174 F.4th 151, 157 (D.C. Cir. 2026) (cleaned up). And it is not for the reasons stated.

The government's argument about prudential ripeness is also unpersuasive. *See* ECF No. 32 at 10–11. The plaintiffs point out that the Supreme Court has questioned the "continuing vitality" of the prudential ripeness doctrine. ECF No. 40 at 8 (quoting *Susan B. Anthony List*, 573 U.S. at 167). But while "the Supreme Court has not disposed of a case purely on prudential ripeness in many years, it has also not overruled the two-part test for prudential ripeness." *Sidak*, 174 F.4th at 157 (cleaned up). That two-part test considers "both the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration." *AT&T Corp. v. FCC*, 349 F.3d 692, 699 (D.C. Cir. 2003) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)). "Whether a challenge to agency action is fit for judicial decision depends both upon whether it involves final agency action and whether judicial intervention would inappropriately interfere with further administrative action." *Ctr. for Biological Diversity v. Zeldin*, 171 F.4th 356, 375 (D.C. Cir. 2026)

### B. The Challenged Rule Is Contrary To Law And Exceeds The Secretary's Statutory Authority

The plaintiffs argue the final rule is contrary to law and exceeds the Secretary's statutory authority, both in violation of the APA. ECF No. 17-1 at 17–22. The APA requires a court to "hold unlawful and set aside agency action" that is "not in accordance with law" or is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C). This requires the court to invalidate agency action "if it conflicts with an agency's own statute" or "if it conflicts with another federal law." *NextWave Pers. Commc'ns, Inc. v. FCC*, 254 F.3d 130, 149 (D.C. Cir. 2001), *aff'd*, 537 U.S. 293 (2003). And an agency cannot "exercise powers not delegated to it by Congress." *Ball, Ball & Brosamer, Inc. v. Reich*, 24 F.3d 1447, 1450 (D.C. Cir. 1994). "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024)

According to the plaintiffs, the challenged rule is contrary to and exceeds the Secretary's authority under the Higher Education Act because the act's plain text says the PSLF program shall be made available to people with a full-time job at a section 501(c)(3) organization and does not

---

(cleaned up). Here, the challenged rule is undisputedly final agency action, and the parties give no "reason to believe" the court is "prematurely meddling with an agency policy decision that is currently undergoing change." *Id.* (citation omitted). And because the plaintiffs' claims present issues that are "purely legal," their claims are "presumptively reviewable." *Cement Kiln Recycling Coal. v. EPA*, 493 F.3d 207, 215 (D.C. Cir. 2007) (citation omitted).

Under the "hardship" prong, the court considers the plaintiffs' "interest in immediate review." *AT&T Corp.*, 349 F.3d at 700 (citation omitted). "The paradigmatic hardship situation is where a petitioner is put to the choice between incurring substantial costs to comply with allegedly unlawful agency regulations and risking serious penalties for non-compliance." *Nat. Res. Def. Council, Inc. v. EPA*, 859 F.2d 156, 166 (D.C. Cir. 1988). Here, the plaintiffs have shown that they must devote—and indeed, already are devoting—substantial resources to ensure compliance with the rule, and they face the loss of PSLF eligibility if they fail to comply with the rule's requirements. The plaintiffs' challenge is thus ripe for review.

allow the Secretary to exclude certain section 501(c)(3) organizations from the program based on her categorization of their activities. ECF No. 17-1 at 17–22. That's right. The act says, "[t]he Secretary shall cancel the balance of interest and principal due" on any eligible federal direct student loan not in default for a borrower who is employed in, and has made 120 monthly payments while employed in, a "public service job." 20 U.S.C. § 1087e(m)(1). It then defines "public service job" to mean a full-time job in a list of public service sectors (including emergency management, government, military service, public safety, law enforcement, public health, public education, certain types of social work, public interest law services, early childhood education, public services for individuals with disabilities and the elderly, public library sciences, and school-based library sciences and other school-based services), or a full-time job "at an organization that is described in section 501(c)(3) of Title 26 and exempt from taxation under section 501(a) of such title." *Id.* § 1087e(m)(3)(B)(i). The act's language therefore requires the Secretary to give borrowers credit for payments made while working full-time at any section 501(c)(3) organization. *See Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 671 (D.C. Cir. 2016) ("Ordinarily, legislation using 'shall' indicates a mandatory duty."). The language does not suggest—let alone say—that the Secretary can pick and choose among section 501(c)(3) organizations.

Yet that's what the challenged rule does. The final rule limits the definition of "qualifying employer" to exclude certain section 501(c)(3) organizations based on the Secretary's determination about the activities of the organization. If, in the Secretary's view, the section 501(c)(3) organization is one that "engage[s] in activities such that [it has] a substantial illegal purpose," then a borrower's loan payments made while employed in a full-time job at the organization will no longer be credited under the program. 90 Fed. Reg. at 49001. That conflicts with the statute, which does not limit the program in that way or delegate authority to the Secretary

to limit what counts as a "public service job." 20 U.S.C. § 1087e(m)(3)(B); *see Loper Bright Enters.*, 603 U.S. at 392 (explaining that the APA "specifies that courts, not agencies, will decide *all* relevant questions of law arising on review of agency action" and "set aside any such action inconsistent with the law as they interpret it" (cleaned up)).

The D.C. Circuit confronted similar circumstances in *Western Minnesota Municipal Power Agency v. FERC*, 806 F.3d 588 (D.C. Cir. 2015). There, a statute provided that the Federal Energy Regulatory Commission "*shall give preference* to applications [for hydroelectric project permits] by States and municipalities." *Id.* at 592 (quoting 16 U.S.C. § 800(a)). The commission attempted to withhold that preference from a municipality seeking a permit for a project "almost 400 miles from" the municipality, asserting that "the best reading of the statute is that municipalities should be accorded preference only with respect to the development of water resources that are located in their vicinity." *Id.* at 591. The D.C. Circuit rejected the agency's argument, holding that "[n]othing in [the] language" of the statute "qualifies or restricts which 'states' or which 'municipalities' are to be favored," and the statute "defined the word 'municipality' broadly, leaving no indication that geographic considerations are relevant to an applicant's status as a municipality." *Id.* at 592 (citations omitted). And the statute's use of the word "shall" indicated a "mandatory directive to the Commission" to give preference to municipalities. *Id.*

Here too, nothing in the language of the statute "qualifies or restricts" which section 501(c)(3) organizations are eligible to participate in the PSLF program. *Id.* And here too, the statute's use of the word "shall" indicates a mandatory directive to the Secretary to give credit to borrowers for loan payments made while they work full-time at a section 501(c)(3) organization. *See* 20 U.S.C. § 1087e(m)(1). If Congress wished to give borrowers credit for loan payments made while they work only at certain section 501(c)(3) organizations or wished to delegate to the

Secretary the authority to make such determinations, it knew how to do so. Indeed, it made nuanced clarifications and exceptions in the same statutory provision when it listed various public service sectors in the definition of "public service job." *See id.* § 1087e(m)(3)(B)(i) (including full time jobs in government but excluding "time served as a member of Congress"). And in the very next subsection, Congress said that "public service job" includes certain "other faculty teaching in high-needs subject areas or areas of shortage . . . as determined by the Secretary"—the very language the Secretary wants to read in here. *Id.* § 1087e(m)(3)(B)(ii). Yet Congress chose to offer no caveats or delegations when it defined "public service job" to include a full-time job at "an organization that is described in section 501(c)(3) of Title 26 and exempt from taxation under section 501(a) of such title." *Id.* § 1087e(m)(3)(B)(i); *see Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation omitted)).

The government's principal argument, embedded throughout its submissions, is: *of course* Congress would be fine with excluding the organizations the Secretary determines should be excluded under her new rule. After all, the government says, Congress's purpose is to forgive loans for people with public service jobs, and the Secretary's rule seeks to identify organizations that "engage in activities such that they have a substantial illegal purpose." 90 Fed. Reg. at 49001; *see* ECF No. 32 at 12–15. According to the government, the Secretary's rule will therefore "advance the public interest," as Congress sought to do in identifying public service sectors and section 501(c)(3) organizations in the first place. ECF No. 32 at 12; *see also* 90 Fed. Reg. at 48972 (justifying the rule because "Congress would not want PSLF benefits to be received by employees of organizations that the Department knows are not serving the public interest"). The plaintiffs and

amici respond with great concern that, labels aside, the Secretary's regime will penalize conduct that is not illegal and punish organizations that espouse positions the government does not like. *See, e.g.*, ECF No. 40 at 17, 23; ECF No. 23-1 at 3 (amici The Lawyers' Committee for Civil Rights Under Law and the American Civil Liberties Union expressing concern that the rule would "hinder the ability of nonprofit employers whose views the Administration does not agree with to recruit and retain the diverse talent they need to carry out their mission-driven work"); ECF No. 22-1 at 12–13 (amici LGBTQ+ Equality Organizations arguing that the rule will "intimidate employers and their borrower-employees into terminating gender-transition care for transgender people under 19"). But the question here is not what the parties think is in the public interest, it is what Congress said in the statute it passed. Indeed, in *Western Minnesota Municipal Power Agency*, the commission made the same line of argument the government makes here, and the circuit rejected it, explaining that the statute's mandatory language was "not an invitation for the Commission to determine when preferring a particular municipality would serve the public interest as the Commission sees it." 806 F.3d at 592. Like there, "the plain text shows that Congress was specific about the public policy it intended to advance" through the PSLF program. *Id.*; *see also Loper Bright Enters.*, 603 U.S. at 404 (recognizing that "to stay out of discretionary policymaking left to the political branches, judges need only fulfill their obligations under the APA to independently identify and respect such delegations of authority, police the outer statutory boundaries of those delegations, and ensure that agencies exercise their discretion consistent with the APA").[3]

---

[3] The plaintiffs' other claims might require consideration of whether the rule penalizes conduct that is not illegal, invites arbitrary and discriminatory enforcement, and chills disfavored speech. *See* ECF No. 1 ¶¶ 53–65; ECF No. 17-1 at 22–36. But the court need not reach those questions given the rule is contrary to and exceeds the Secretary's authority under the law.

The government, second, argues that the Secretary's general rulemaking authority gives her broad authority to administer the PSLF program. *See* ECF No. 32 at 11–12. It invokes several provisions authorizing the Secretary to conduct general rulemaking to carry out her programs and objectives. *See, e.g.*, 20 U.S.C. § 1221e-3 ("The Secretary, in order to carry out functions otherwise vested in the Secretary by law or by delegation of authority pursuant to law, and subject to limitations as may be otherwise imposed by law, is authorized to make, promulgate, issue, rescind, and amend rules and regulations governing the manner of operation of, and governing the applicable programs administered by, the Department."); *id.* § 3474 ("The Secretary is authorized to prescribe such rules and regulations as the Secretary determines necessary or appropriate to administer and manage the functions of the Secretary or the Department."). But an agency's "general rulemaking authority does not mean that the specific rule the agency promulgates is a valid exercise of that authority." *Colo. River Indian Tribes v. Nat'l Indian Gaming Comm'n*, 466 F.3d 134, 139 (D.C. Cir. 2006). Instead, "[w]hen an agency acts pursuant to its rulemaking authority, a reviewing court determines whether the resulting regulation exceeds the agency's statutory authority." *N.Y. Stock Exch. LLC v. SEC*, 962 F.3d 541, 546 (D.C. Cir. 2020). And an agency may not invoke a "generic grant of rulemaking authority" to promulgate rules that "alter the specific choices Congress made." *Nat'l Ass'n of Broadcasters v. FCC*, 39 F.4th 817, 820 (D.C. Cir. 2022). Accordingly, the Secretary's general rulemaking authority does not give her authority to promulgate a rule that contradicts the plain language of the Higher Education Act.

The government, third, argues the text of the Higher Education Act authorizes the Secretary to make determinations based on her assessment of the activities of section 501(c)(3) organizations. *See* ECF No. 32 at 12–13. This is so, the government says, because the act's definition of "public service job" contains overlapping categories. *Id.* For example, the government

points out that the definition includes "government" and also includes "military service," "law enforcement," and "public library sciences," which are also government jobs. *Id.* According to the government, that overlap means the text is intended to "provide[] insight," leaving it to the Secretary to adopt a rule that "makes sense of these overlapping categories" and ensure that only those "professions that advance the public interest were included in the list." *Id.* (quoting 90 Fed. Reg. at 48972). That's some pretty tortured statutory analysis. The text does not say it is providing insight, it says the Secretary "shall" cancel loans for borrowers who made payments while having full-time jobs in certain public service sectors or at section 501(c)(3) organizations. There is nothing strange about the statute including full-time jobs in the "government" sector yet being clear that other sectors which may technically be employment by the government are also included. *See Helmerich & Payne Int'l Drilling Co. v. Venezuela*, 153 F.4th 1316, 1331 n.1 (D.C. Cir. 2025) (recognizing that "[s]ometimes Congress drafts statutes containing redundancies, for the sake of a 'belt-and-suspenders approach'" (citation omitted)). And even if that were odd or generated some degree of ambiguity, it is hard to see how that could act as a delegation to the Secretary to make the determination that certain section 501(c)(3) organizations do not qualify.

Finally, the government argues the Internal Revenue Service has been granted the authority to revoke the tax-exempt status of organizations that engage in activities that are illegal or otherwise contrary to public policy, citing the Supreme Court's interpretation of the Internal Revenue Code to include that "the purpose of a charitable trust may not be illegal or violate established public policy." *Bob Jones Univ. v. United States*, 461 U.S. 574, 591 (1983); *see* ECF No. 32 at 14–15. But, while *Bob Jones* found that such an exception was founded in charitable trust principles that were "deeply rooted in our history" and therefore should be read into the Internal Revenue Code, the government has not provided any history, let alone a deeply rooted

one going back centuries, in the context of loan forgiveness that would justify reading the Higher Education Act to authorize the Secretary to disqualify certain section 501(c)(3) organizations. *Bob Jones Univ.*, 461 U.S. at 588.

Because the challenged rule is contrary to and exceeds the Secretary's authority under the Higher Education Act, the court must vacate the rule.[4]

## III. Conclusion

For these reasons, the plaintiffs' motion for summary judgment, ECF No. 17, is granted. The government's cross-motion to dismiss, or in the alternative for summary judgment, ECF No. 32, is denied. The final rule, William D. Ford Federal Direct Loan (Direct Loan) Program, 90 Fed. Reg. 48966 (Oct. 31, 2025), is vacated. A separate order accompanies this memorandum opinion.

AMIR H. ALI
United States District Judge

Date: June 30, 2026

[4] The government argues that vacatur is not appropriate and any relief should be limited to the parties. ECF No. 32 at 24. But vacatur is the "normal remedy" when agency action is determined to be unlawful under the APA. *Ky. Mun. Energy Agency*, 45 F.4th at 179 (citation omitted). Contrary to the government's suggestion, the Supreme Court's ruling in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), did not hold otherwise, specifically acknowledging "the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action." *Id.* at 847 n.10; *see* ECF No. 32 at 25.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROBERT F. KENNEDY CENTER FOR JUSTICE AND HUMAN RIGHTS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>LINDA MCMAHON, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-03860 (AHA) |

**Order**

For the reasons stated in the accompanying memorandum opinion, Plaintiffs' motion for summary judgment, ECF No. 17, is granted. Defendants' cross-motion to dismiss, or in the alternative for summary judgment, ECF No. 32, is denied. The final rule, William D. Ford Federal Direct Loan (Direct Loan) Program, 90 Fed. Reg. 48966 (Oct. 31, 2025), is vacated. The Clerk of Court is directed to close the case.

AMIR H. ALI
United States District Judge

Date: June 30, 2026